**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**FUND RECOVERY SERVICES, LLC,**

Plaintiff,

v.

**RBC CAPITAL MARKETS, LLC et al.,**

Defendants.

**Case No. 1:20-cv-5730**

**Hon. Judge Matthew F. Kennelly**

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS COMPLAINT REGARDING PLAINTIFF'S FAILURE TO**
**COMPLY WITH RULES 8 AND 9(b) AND TO PLEAD A DUTY TO DISCLOSE**

**Foley & Lardner, LLP**
321 N. Clark Street, Suite 3000
Chicago, Illinois 60654-4762
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
Michael J. Small (IL Bar No. 6207645)
William J. McKenna (IL Bar No. 3124763)
David B. Goroff (IL Bar No. 6190039)
msmall@foley.com
wmckenna@foley.com
dgoroff@foley.com

*Attorneys for Little Owl Argon, LLC, Glenora Company, James I. Uihlein and James P. Uihlein*

**Greenberg Traurig, LLP**
77 W. Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-8400
Scott T. Mendeloff
Gabriel Aizenberg
mendeloffs@gtlaw.com
aizenbergg@gtlaw.com

*Attorneys for Peter Ferro, Jr., Margon LLC, Joseph Canfora, Mark Triffler, Mark Triffler Trust, Bruce Breitweiser, Byron Faermark, Barry Edmonson, Cardinal Trust and Merit Gaming Management Group, L.P.*

**Cotsirilos, Tighe, Streicker, Pouolos & Campbell, Ltd.**
33 North Dearborn Street, Suite 600
Chicago, Illinois 60602
Telephone: (312) 263-0345
Terence H. Campbell
Eric S. Pruitt
tcampbell@cotsiriloslaw.com
epruitt@cotsiriloslaw.com

*Attorneys for John A. Kuhlman, Jr.*

**Spach Manahan O'Dell LLP**
12707 High Bluff Drive, Suite 200
San Diego, California 92130
Telephone: (858) 925-3391
Ryan Dennis O'Dell
rodell@smolawfirm.com

*Attorney for Berj Arakelian, B. Money Holdings, LLC and Bergaviv, LLC*

**Abrahamson, Reed & Bilse**
8230 Hohman Avenue
Munster, Indiana 46321
Telephone: (219) 595-5306
Harold Abrahamson
aralawfirm@aol.com

*Attorney for Eric Schnosenberg*


**Bauch & Michaels, LLC**
53 W. Jackson Blvd., Suite 1115
Chicago, Illinois 60604
Telephone: (312) 588-5000
Paul M. Bauch
Carolina Y. Sales
pbauch@bmlawllc.com
csales@bmlawllc.com

*Attorneys for Sean Tomaszkiewicz and Blue Treble Solutions, LLC*

**Greenberg Traurig, LLP**
77 W. Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-8400
Steven Marc Malina
David Stephen Repking
malinas@gtlaw.com
repkingd@gtlaw.com

*Attorneys for RBC Capital Markets, LLC*


**Law Office of Peter S. Stamatis, PC**
1 E. Wacker Drive, Suite 2350
Chicago, Illinois 60601
Telephone: (312) 606-0045
Peter Sam Stamatis
peter@stamatislegal.com

and

**Law Offices of Steven S. Shonder**
1 E. Wacker Drive, Suite 2350
Chicago, Illinois 60601
Telephone: (312) 612-5191
Steven S. Shonder
steve@shonderlegal.com

*Attorneys for Harry Madanyan*

**Nishay Kumar Sanan**
53 W. Jackson, Suite 1437
Chicago, Illinois 60604
Telephone: (312) 692-0360
Nishay K. Sanan
nsanan@aol.com

*Attorney for Bruce Goldstein and Alhambra Circle Partners, LLC*

**Jaszczuk P.C.**
30 S. Wacker Drive, Suite 2200
Chicago, Illinois 60606
Telephone: (312) 442-0366
Daniel I. Schlessinger
Seth Corthell
dschlessinger@jaszczuk.com
scorthell@jaszczuk.com

and

**Cohen Tauber Spievack & Wagner P.C.**
420 Lexington Avenue, Suite 2400
New York, New York 10170
Telephone: (212) 586-5800
Kenneth J. Rubinstein
Jackson S. Davis
krubinstein@ctswlaw.com
jdavis@ctswlaw.com

*Attorneys for Daniel Wirzberger*

**Gary Zumski**
4204 E. Frontage Road
Rolling Meadows, Illinois 60008
globalwide08@gmail.com

*Pro Se*

**Barry Kostiner**
bkostiner@fintecham.com

*Pro Se*

## <u>TABLE OF CONTENTS</u>

I.    The Complaint Fails to Satisfy Fed. R. Civ. P. 8 and 9(b). ..................................................... 1

II.   Princeton Fails to Plead Duty of Defendants To Disclose...................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerogrand, Inc., v. CenterPoint Prop. Tr.*,
  2010 WL 2169463 (N.D. Ill. 2010) ...........................................................................2

*Am. Auto. Accessories, Inc. v. Fishman*,
  175 F.3d 534 (7th Cir. 1999) ...................................................................................1

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................1

*U.S. ex rel. Bogina v. Medline Indus.*,
  809 F.3d 365 (7th Cir. 2016) ...................................................................................7

*Cincinnati Life Ins. Co. v. Beyrer*,
  722 F.3d 939 (7th Cir. 2013) ...................................................................................7

*In re Citigroup Inc. S'holder Derivative Litig.*,
  964 A.2d 106 (Del. Ch. 2009)................................................................................12

*Cocroft v. HSBC Bank USA, N.A.*,
  2012 WL 1378645 (N.D. Ill. 2012) .........................................................................3

*Cornielson v. Infinium Cap. Mgmt.*,
  916 F.3d 589 (7th Cir. 2019) ...................................................................................2

*DreamPak, LLC v. InfoData Corp.*,
  2019 WL 130448 (N.D. Ill. 2019) .........................................................................10

*Goren v. New Vision, Int'l*,
  156 F.3d 721 (7th Cir 1998) ....................................................................................1

*Graue Mill Dev. Corp. v. Colonial Bank & Tr. Co. of Chicago*,
  927 F.2d 988 (7th Cir. 1991) ...................................................................................1

*Greenberger v. GEICO Gen. Ins. Co.*,
  631 F.3d 392 (7th Cir. 2011) .................................................................................13

*Jepson, Inc. v. Makita Corp.*,
  34 F.3d 1321 (7th Cir. 1994) ...................................................................................1

*Lachmund v. ADM Inv. Servs.*,
  191 F.3d 777 (7th Cir. 1995) ...................................................................................2

*Lempa v. Eon Labs, Inc.*,
  2019 WL 1426011 (N.D. Ill. 2019) ................................................................2

*Loggerhead Tools, LLC v. Sears Holdings Corp.*,
  2016 WL 5111573 (N.D. Ill. 2016) ..............................................................11

*McMahan v. Deutsche Bank AG*,
  938 F. Supp. 2d 795 (N.D. Ill. 2013) ...........................................................11

*Parish v. Beneficial Illinois, Inc.*,
  1995 WL 360468 (N.D. Ill. 1995) ....................................................10, 11, 13

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
  631 F.3d 436 (7th Cir. 2011) ..........................................................................7

*Reynolds v. East Dyer Dev. Co.*,
  882 F.2d 1249 (7th Cir. 1989) ........................................................................9

*Rocha v. Rudd*,
  826 F.3d 905 (7th Cir. 2016) ..........................................................................2

*Siemer v. Quizno's Franchise Co. LLC*,
  2008 U.S. Dist. LEXIS 25907 (N.D. Ill. 2008) ......................................11, 13

*Squires Cannon v. Forest Pres. Dist. of Cook Cty.*,
  897 F.3d 797 (7th Cir. 2018) ........................................................................10

*Suburban Buick, Inc. v. Gargo*,
  2009 WL 1543709 (N.D. Ill. 2009) ................................................................1

*In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*,
  159 F. Supp. 3d 898 (N.D. Ill. 2016) .............................................................3

*Toulon v. Cont'l Cas. Co.*,
  877 F.3d 725 (7th Cir. 2017) ..........................................................................9

*Trusa v. Nepo*,
  2017 Del. Ch. LEXIS 57 (Del. Ch. 2017).....................................................12

*United States v. Wiemert*,
  819 F. 3d 351 (7th Cir 2016) ........................................................................10

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
  20 F.3d 771 (7th Cir. 1994) ............................................................................1

*Waldock v. M.J. Select Glob., Ltd.*,
  2005 WL 3542527 (N.D. Ill. 2005) ................................................................2

*Wash. House Condo. Ass'n of Unit Owners v. Daystar Sills, Inc.*,
  2017 WL 3412079 (Del. Super. Ct. 2017) ................................................................12

*Wert v. Cohn*,
  2019 WL 1584563 (N.D. Ill. 2019) ................................................................11, 12

*Wigod v. Wells Fargo Bank, N.A.*,
  673 F.2d 547 (7th Cir. 2012) ................................................................................2

*Yeftich v. Navistar, Inc.*,
  722 F.3d 911 (7th Cir. 2013) ................................................................................1

*Zurich Cap. Markets Inc. v. Coglianese*,
  332 F. Supp. 2d 1087 (N.D. Ill. 2004) ................................................................13

**Statutes**

18 U.S.C. §1962(c)-(d) ................................................................................1, 2

Del. Code tit. 6, § 18-406 ................................................................................12

**Other Authorities**

Fed. R. Civ. P. 8 ................................................................................1

Fed. R. Civ. P. 9(b) ................................................................ *passim*

Fed. R. Bankr. P. 2004 ................................................................9

## I.     The Complaint Fails to Satisfy Fed. R. Civ. P. 8 and 9(b).

In its disjointed, blunderbuss complaint, Princeton lodges fraud-based substantive RICO and conspiracy claims, 18 U.S.C. §1962(c)-(d), against all 37 Defendants, alleging they each engaged in a common mail/wire fraud scheme. For mail/wire fraud, a plaintiff must allege that: (i) defendant engaged in a scheme to defraud; (ii) ***with the intent to defraud***; and (iii) using the mails or interstate wires in furtherance of the scheme. *See Am. Auto. Accessories, Inc. v. Fishman*, 175 F.3d 534, 542 (7th Cir. 1999). Where a plaintiff seeks to plead a RICO pattern via predicate acts of mail/wire fraud, Rule 9(b)'s heightened pleading requirements apply, requiring a plaintiff to allege fraud with particularity *as to each defendant. See Goren v. New Vision, Int'l*, 156 F.3d 721, 732 (7th Cir 1998); *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994).

On the issues of knowledge and intent, a RICO plaintiff must allege facts sufficient to establish knowing and intentional action on the part of *each* defendant.[1] *See Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) (complaint must "allege facts from which it can reasonably may be inferred that the defendants engaged in the scheme with fraudulent intent" and must "identify which of them was responsible for the individual acts of fraud"); *Suburban Buick, Inc. v. Gargo*, 2009 WL 1543709, *4 (N.D. Ill. 2009) (dismissing RICO claim: plaintiff failed to allege facts from which inference could be made that defendants committed predicate acts with fraudulent intent); *see also Yeftich v. Navistar, Inc.*, 722 F.3d 911, 916 (7th Cir. 2013) ("Bare assertions of the state of mind required for the claim ... must be supported with subsidiary facts"); *Graue Mill Dev. Corp. v. Colonial Bank & Tr. Co. of Chicago*, 927 F.2d 988, 992 (7th Cir. 1991)

---

[1] While the particularity requirements of Rule 9(b) do not extend to knowledge and intent, such elements still must satisfy the plausibility requirements of Rule 8. *See Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009) ("Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss.")

("Most importantly, complaints charging fraud must sufficiently allege the defendant's fraudulent intent. 'Cryptic statements' suggesting fraud are not enough.'") (internal citations omitted).

The particularity requirement extends to allegations sufficient to show a duty to disclose, *see Wigod v. Wells Fargo Bank, N.A.*, 673 F.2d 547, 571 (7th Cir. 2012); *Aerogrand, Inc., v. CenterPoint Prop. Tr.,* 2010 WL 2169463, \*4 (N.D. Ill. 2010); concealment, *see Lempa v. Eon Labs, Inc.*, 2019 WL 1426011, \*5 (N.D. Ill. 2019) ("Rule 9(b) imposes a heightened pleading standard on claims of fraud—including fraudulent concealment—and requires plaintiffs to allege their claim with 'particularity.'"); and agency. *See Lachmund v. ADM Inv. Servs.*, 191 F.3d 777, 783 (7th Cir. 1995) (plaintiff failed to satisfy Rule 9(b) to hold defendant liable for § 1962(c) RICO claim due to failure to allege agency relationship among defendants with particularity); *Waldock v. M.J. Select Glob., Ltd.*, 2005 WL 3542527, \*3 (N.D. Ill. 2005) ("[W]hen the plaintiff relies upon the same circumstances to establish both the alleged fraud and the agency relationship of a defendant, plaintiff must plead agency with particularity.") (quotations omitted).

The Complaint grossly violates Rule 9(b) by suing a far-flung set of Defendants without any specific factual allegations of participation and/or intentional conduct against many of them. Instead, Princeton employs pleading tactics that repeatedly have been rejected, that is, group pleading and pleading based upon "information and belief."

***Group Pleading or "Lumping."*** The Seventh Circuit routinely rejects complaints that make broad allegations against groups of multiple defendants, *e.g.*, accusing them all of fraud without explanation as to who did what, which is important to provide a defendant fair notice of how s/he is alleged to have acted with knowledge and intent. *See Cornielson v. Infinium Cap. Mgmt.*, 916 F.3d 589, 599 (7th Cir. 2019) (affirming ruling that plaintiff's gambit of accusing all defendants of making all misrepresentations lacked specificity); *Rocha v. Rudd*, 826 F.3d 905 (7th

2

Cir. 2016) (upholding dismissal of fraud claims: plaintiff lumped defendants together, failing to provide each defendant with fair notice of his alleged participation in the fraud); *Cocroft v. HSBC Bank USA, N.A.*, 2012 WL 1378645, *7 (N.D. Ill. 2012) (plaintiffs did not "satisfy Rule 9(b) by lumping all defendants together" where complaint alleged "all of the defendants, including MERS, misrepresented the true owner of the loan."); *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, 159 F. Supp. 3d 898, 922 (N.D. Ill. 2016) (dismissing RICO claims against multiple defendant groups: "allegations do not describe with sufficient particularity the circumstances of any misrepresentations that a defendant allegedly made directly to plaintiff").

The Complaint's basic structure is grounded upon impermissible grouping that fails to differentiate between the 37 Defendants. Having broadly based its fraud claims upon allegedly improper diversion of assets by and false statements from two bankrupt businesses, Argon Credit and Argon X – actions that by their nature would arise from specific activity of individuals – Princeton has chosen to pursue a vast array of individuals and entities with widely varying relationships to the bankrupt companies. "Defendants" range from inside officers and directors to outside directors to investors/investing entities not on the board to third-party contractors with varying types of contracts to even an entity (RBC) that has nothing to do with the Argon companies save that one of its employees used a corporate email address to communicate regarding his private involvement with Argon. Gross allegations against 37 Defendants with such disparate relationships to the target entities is inadequate. As to two third-party corporate Defendants, RBC and Merit, the Complaint offers no explanation as to how they are involved in this case.

As to the other Defendants, the Complaint advances dramatically different allegations regarding participation. The Complaint makes specific allegations as to a limited number of Defendants. Otherwise, it relies upon group allegations based upon artificial (and illogical)

combinations: the "Argon Insiders" and the "Argon Outsiders." Princeton lumps together 25 Defendants into a group it misleadingly calls the "Argon Insiders" (¶17), which purportedly envelops, "Defendants who were an owner, board member/manager and/or an executive officer of the Argon Entities." (¶15; *see also* ¶7 (noting it includes "the Argon Entities' investors...").) The Complaint errs in this regard, for it lists Glenora, which is not an investor, officer or manager of an Argon Entity and is not alleged to be. (¶45, part owner and manager *of an investor*, Little Owl.)

Princeton then proceeds to make a large number of allegations against "Argon Insiders" without further differentiation.[2] Beyond the fact that group pleading is generally improper, the grouping Princeton uses is particularly overbroad given the obligation to make particular allegations as to intent and action by *each* defendant. Even if Princeton wishes to rely upon inferences, its Argon Insider set is illogical. Defendants that are insider officers and directors are in very different positions from outside directors, which are in a different position from outside investors. For example, it is frequently the case that outside directors have far less access to information or corporate activity than officers and inside directors, and narrower obligations. (*See infra* at 12.) As to outsider director defendant Kuhlman, this point is especially telling due to the Complaint's several allegations that Kuhlman complained that the officers and inside directors were not providing adequate information to the outside directors.[3] (¶¶276, 280, 293, 296-98.) The Complaint makes no allegations as to particularized conduct, knowledge, or intent regarding the Spartan Loans or alleged false statements as to outside director Defendants Canfora and Triffler. It is even more illogical to label non-board investors as "insiders." Certainly, an LLC member has

---

[2] *See* ¶¶15-16, 104, 107, 113, 115, 117, 129, 135, 138, 139, 156, 167, 168, 172, 178, 179, 196, 222, 231, 233-35, 237, 240-41, 243, 255, 263-64, 282-83, 290-91, 293-94, 299-300, 304, 306, 308, 336, 414-15, 418, 420, 436, 449, 452, 455, 458, 462, 518, 556, 562.
[3] Tellingly, in ¶292, the Complaint confesses that it cannot say whether Kuhlman, an outside director, knew about the alleged "rampant fraud."

no responsibility for operating a company. The Complaint nevertheless sweeps in numerous such parties, *i.e.*, JIU, JPU, Glenora,[4] Little Owl, and Margon, as "insiders." (¶¶15-17.)

The Complaint's handling of "Argon Outsiders" is no less flawed. Princeton claims these "include those Defendants who were owned by, affiliated with, managed by or executed self-dealing transactions with, any one or more of the Argon Entities and/or Argon Insiders who perpetrated and/or financially benefitted from the fraud … ." (¶18.) This hodgepodge includes: (i) persons who worked for or owned outside consultants to the Argon Entities, *e.g.*, Goldstein (¶¶19, 38); (ii) persons who worked for outside parties who dealt with certain Spartan Entities, *e.g.*, Wirzberger (¶¶19, 57); (iii) members of Argon Credit (¶309); and (iv) third-party businesses that contracted with Argon Credit in a wide variety of different ways.[5] Nothing shows these Defendants acted together. As defined, Argon Outsiders need not have known or done anything to face liability. (¶18). Still, the Complaint contains numerous allegations as to these Argon Outsiders.[6]

Against this backdrop, the allegations of the Complaint are particularly inadequate. Most egregiously, Plaintiff repeated alleges that <u>all</u> of the Defendants engaged in many of the elements of the case.[7] Indeed, this includes alleged involvement of all of the defendants in all of the RICO predicates (¶¶489-520) including preparation of false financials and participation in the Spartan Loans (¶499-500, 509-10). Furthermore, in naming the "ringleaders" of the scheme, Princeton identifies six specific defendants but also includes "other defendants" as ringleaders and also

---

[4] While Defendants must accept this allegation as true for purposes of a motion to dismiss, Glenora is a manager which provides services to Little Owl, JPU, and JIU.

[5] The contractors range from Merit with a single contract of unknown import (¶418) to Blue Treble with a contract to develop software for Argon Credit (¶450) to Broadmark with a single contract to assist Argon Credit with debt and capital raising efforts (¶424) to Peraza with a similar contract as Broadmark's (¶428), none of which has anything to do with the Spartan loans or making false statements to Princeton.

[6] *See* ¶¶18, 113, 115, 117, 129, 135, 138, 139, 178, 231, 233, 235, 240, 282, 299, 437, 442, 452, 518, 562.

[7] *See* ¶¶3-5, 7, 136, 145, 205, 489-92, 494-96, 499-500, 503, 505, 509-23, 525-29, 532-37, 541-42, 546, 548-51, 555-56, 558-60, 564, 569-75, 579-82, 584-87, 592-97, 602-04, 606-09.

references all of the Argon Insiders and Outsiders. (¶139). Similarly, Princeton repeatedly uses the non-specific references, *e.g.*, "various" defendants (¶¶145, 452, 490); and "certain" defendants (¶¶139, 178, 206, 306).[8] Other examples of this misuse of "Defendants" (or "Argon Insiders" and Argon Outsiders" together) include: ¶525 ("Defendants knowingly and willfully devised a manner by which they could divert and steal Secured Collateral for their own self-dealing benefit."); ¶526 ("Defendants elected to fund, in part, the fraudulent operations of the Argon Entities through the loan proceeds from the Fintech Loan Agreement."); ¶528 ("Each of Defendants committed numerous predicate acts in the nature of knowingly fraudulent communications by wire."); ¶535 ("Each RICO Defendant knew that the dissemination of the False Financials and diversion of the Secured Collateral's accounts receivables were false and fraudulent….").

Examples of Princeton's misuse of Argon Insider grouping are: ¶107 (Argon Insiders "were aware of the Fintech Loan Agreement and the Financial Covenants … that had been assigned to and then held at that time by PAIF."); ¶115 (all Argon Insiders "formed FTAM for the sole purpose of acquiring and servicing a portfolio of Consumer Loans originating from Argon Credit and being sold to FTAM … thereby being diverted from Argon X and otherwise divesting Princeton of its Secured Collateral."); ¶135 (Argon Insiders "wrongly converted funds from the Revolving Note for illicit improper purposes … ."); ¶264 ("financial documents that the Argon Insiders forwarded and disclosed to Princeton failed to reveal that same impairment caused by the Doubtful Accounts."); ¶282 (all Argon Insiders had "willful blindness to the fraud"); ¶300 "other Argon Insiders assisted the Argon Entities in keeping two sets of books and records"). Given the dramatically different roles of the several Argon Insiders, this approach fails under Rule 9(b).

---

[8] Princeton uses a similar tactic via other catch-alls such as "other defendants" (¶¶104, 107, 113, 115, 139, 167, 179, 196, 200, 222, 231, 234, 241, 267, 282-83, 290, 294, 300, 308, 336, 518, 561, 682).

Examples of Princeton's misuse of Argon Outsider grouping are: ¶138 ("Argon Outsiders that facilitated the Argon Transactions knew or should have known the Spartan Loans were Secured Collateral incapable of being re-pledged or sold without Princeton's knowledge and approval … ."); ¶231 (Spartan Servicing Fees "were converted by … Argon Outsiders during the term of the Spartan Transactions, for their own financial benefit."); ¶235 ("The purpose of this additional fraud was to further deceive PAIF and cause PAIF to delay in declaring an event of default of the Revolving Note until such time as the Argon Insiders and Argon Outsiders could steal, plunder and abscond with Princeton's Secured Collateral"); ¶437 ("The diversion of Broadmark Payments for the benefit of Argon Outsiders was a knowing and fraudulent theft and conversion of Princeton's Secured Collateral"). The Complaint offers nothing to show that many of the Argon Outsiders had any knowledge of or connection with the Spartan Loans, Argon X's Secured Collateral, or any reports from Argon Credit to Princeton.

*"Upon Information and Belief."* Princeton also relies upon "upon information and belief," which the Seventh Circuit has held to lack required particularity in the fraud context: "[a]llegations based on 'information and belief' thus won't do in a fraud case-for 'on information and belief' can mean as little as 'rumor has it that…'" *U.S. ex rel. Bogina v. Medline Indus.*, 809 F.3d 365, 370 (7th Cir. 2016); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011) (plaintiff who based "allegations of fraud on information and belief" failed to satisfy "burden of pleading plausible grounds for suspecting that the defendant engaged in a fraudulent scheme"); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013) ("We frown on making allegations 'on information and belief' in the fraud context and generally find that such claims do not meet Rule 9(b)'s particularity requirement.").

Most glaringly, Princeton admits that all of the allegations not about itself are based solely on information and belief, for the Complaint expressly states that it makes all of its allegations "upon knowledge as to itself and its own acts *and otherwise upon information and belief*." (Compl., p. 1). Equally egregiously, the Complaint founds upon this inadequate basis its key allegation of knowledge and intent of the Argon Insiders regarding the Spartan Loans (¶196.):

> Upon information and belief, [12 named defendants] and all other Argon Insiders …were each aware at the time, or subsequently became aware, of the Spartan Transactions and Spartan Loans and, further, knew, or should have known, that the Spartan Transactions and Spartan Loans were neither disclosed to Princeton nor reflected in Argon Credit's …financial documents being provided to Princeton.

Furthermore, the Complaint consistently improperly relies upon this crutch regarding core issues of misconduct and state of mind.[9]

Princeton has no justification for its pleading errors, for Princeton clearly had access to numerous specific internal Argon documents and had the opportunity to take, and in fact did take, discovery in the Argon bankruptcy proceeding. The Complaint makes numerous references – often with quotes – to documents Princeton would not have received or had access to in the ordinary course. (*See, e.g.*, ¶63 (quoting findings of Independent Accountant's Review Report prepared for Argon Credit); ¶¶130-31, 183, 263 (quoting emails involving officers of Argon Credit); ¶¶164, 216 (quoting emails between Kostiner and Wirzberger); ¶236 (quoting email between Glenora, Little Owl, JIU, and JPU, and Argon Credit officers and board members); ¶¶254-55 (quoting Argon Credit board meeting agenda); ¶¶276-78 (quoting letter from Kuhlman to Argon Credit

---

[9] *See, e.g.*, ¶16 (whether Argon Insiders knew and were aware of decisions by Argon Entities); ¶128 (whether FTAM paid fair value for Spartan Loans); ¶139 (whether purported "ringleaders" of scheme received copies of Argon Credit's financial statements); ¶564 (whether Defendants absconded with and converted purchase price of Spartan Loans paid by FTAM to Argon Credit). *See also* ¶¶22-38, 40-43, 45-48, 50-55, 57-58, 117 (whether purchase price of Spartan Loans was retained by defendants who controlled the Spartan Entities), 151, 160 (whether Argon Credit sold the Spartan Loans to FTAM), 165 (whether funding for Spartan Note came from Argon Credit funds), 208, 213-14, 220, 223, 226-28, 233, 250, 435, 461, 464, 563, 636, 684.

officers and board). Princeton's usage of these specific quoted documents shows it has access to documents from which it should be able to build its fraud claims. Further, Princeton participated throughout Argon's bankruptcy and had the opportunity to take, and did take, Rule 2004 discovery. *See In re Argon Credit, LLC*, 16-39654, ECF No. 84, [Princeton's] Motion for Rule 2004 Exam; ECF No. 89, Order Authorizing [Princeton] to Examine Certain Payment Processors Pursuant to Fed. R. Bankr. P. 2004; ECF No. 95, [Princeton's] Notice of Issuance of 2004 Subpoenas.

## II.    Princeton Fails to Plead Duty of Defendants To Disclose.

The Complaint also is fatally flawed by its failure to plead a duty to disclose – the key point underlying its claims. As detailed in Complaint Paragraph 7, Princeton's theories of misconduct are all grounded in non-disclosure. Princeton asserts that all of the enumerated alleged improper activities were "wrongfully ***concealed*** from Princeton as the secured lender." Princeton's description of the specific wrongful acts is also grounded in concealment: (i) "***secretly*** double-pledging Secured Collateral," provisions of financial statement and financial information "***concealing*** …insolvency," "***concealing*** and then transferring Secured Collateral and "***concealing*** … the illegal transfers," and "***secretly*** diverting assets." This theory extends to other portions of Count 1 (*see, e.g.*, ¶542) and to other counts of the Complaint.[10]

At no point does Princeton adequately allege that any Defendant had a duty to disclose information to Princeton. Under Illinois law, "[a] duty to disclose may be based on a fiduciary relationship or a relationship of trust and confidence where 'defendant [is] in a position of influence and superiority over plaintiff.'" *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 737 (7th Cir. 2017); *Reynolds v. East Dyer Dev. Co.*, 882 F.2d 1249, 1252 (7th Cir. 1989) ("mere failure to

---

[10] Counts 2 and 10 (¶¶471-79 & ¶¶634-38, Defendants conspired to withhold information regarding Argon's financial condition); Counts 3-4 (¶¶558-60, 584, fraudulent misrepresentation by failing to disclose); Counts 5-6 (¶¶594, 606, fraudulent concealment by failing to disclose); Count 7 (¶¶614-15, negligently failed to disclose).

disclose, absent something more" has not been "held to be fraud under the mail and wire fraud statutes"); *United States v. Wiemert*, 819 F. 3d 351, 357 (7th Cir 2016) ("And we do not imply that all or even most instances of nondisclosure of information that someone might find relevant come within the purview of the mail and wire fraud statutes.") (quotations omitted); *Cf. Squires Cannon v. Forest Pres. Dist. of Cook Cty.*, 897 F.3d 797, 805 (7th Cir. 2018) (to prove fraudulent concealment under Illinois law, a plaintiff must allege "that the defendant [engaged in the] concealment [of] a material fact when he was under a duty to disclose to plaintiff").

Princeton does not allege facts which would create a separate, personal duty of many of the Argon Insiders who are not employees or officers. Princeton literally offers one conclusory allegation that any of the Defendants owed it *any* duty much less a fiduciary duty giving rise to a duty to disclose: "Through their respective misrepresentations, omissions and non-disclosures, as well as the failure to fulfill their duty to advise Princeton as the secured party of the fraud and to otherwise prevent such fraud … ." (¶597; *see* ¶609 (same).) This allegation does not demonstrate either a fiduciary relationship or a relationship of trust and confidence between Princeton and any of the Defendants and it fails Rule 9(b) for the reasons discussed above. The remainder of the Complaint contains no allegations that Princeton placed trust and confidence in any of the Defendants. *See DreamPak, LLC v. InfoData Corp.*, 2019 WL 130448, *8 (N.D. Ill. 2019) (dismissing fraudulent concealment claim: plaintiff failed to adequately allege a fiduciary duty or a relationship of trust/confidence); *Parish v. Beneficial Illinois, Inc.*, 1995 WL 360468, *6 (N.D. Ill. 1995) (dismissing RICO: "Plaintiffs' allegations provide no support for the proposition that [defendant] owed Plaintiffs a fiduciary or other duty to disclose the information in question").

A duty also "may arise when a defendant tells a half-truth and then becomes obligated to tell the full truth." *Id.* (citing *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397-98 (7th Cir.

10

2009)). Such a duty does not extend to a defendant that was not involved with the half-truth. *See Timaero Ireland Ltd.*, 2021 WL 963815, *8 (N.D. Ill. 2021) (no duty to disclose where plaintiff failed to allege that defendant knew statements were half-truths at time of disclosure); *Wert v. Cohn*, 2019 WL 1584563, *7 (N.D. Ill. 2019); *Parish*, 1995 WL 360468, *3 (no duty to disclose where plaintiffs failed to identify any false statements, half-truths, false promises, or other affirmative actions by defendant).

But for the existence of a fiduciary duty (which Princeton fails to allege), the only basis for a duty to disclose would arise from the telling half-truths, which of course would require the making of statements at all. On this score, the sole contact that the Complaint alleges between Princeton and the Defendants is Defendant Schnosenberg (via emails with him). (Compl., Ex. A.) Princeton's contractual relationship with Argon X – which Princeton alleges "contain[s] multiple provisions regarding the maintenance and provision of accurate and truthful financial records and information to [Princeton]" (¶197) – does not provide a basis for a duty to disclose. In Illinois, "parties to a contract … do not owe a fiduciary duty to one another." *Siemer v. Quizno's Franchise Co. LLC*, 2008 U.S. Dist. LEXIS 25907, *20 (N.D. Ill. 2008); *see also Loggerhead Tools, LLC v. Sears Holdings Corp.*, 2016 WL 5111573, *3 (N.D. Ill. 2016) ("Generally, parties to a contract are not each other's fiduciaries.") (internal quotations omitted).

As to the several Argon Insiders, the Complaint does not allege how the several Defendants other than Defendant Schnosenberg are alleged to have participated in what was and was not being provided to Princeton. In fact, other than Argon Credit officers or employees, the Complaint does not plausibly allege that that any of the other Defendants had any involvement with or even awareness of what Defendant Schnosenberg provided to Princeton. *See McMahan v. Deutsche Bank AG*, 938 F. Supp. 2d 795, 806 (N.D. Ill. 2013) (fraudulent concealment claim failed under

Rule 9(b) "because the Complaint contains no facts to suggest that the Deutsche Bank Defendants owed Plaintiffs a duty to disclose. The facts in the Complaint suggest that Plaintiffs had very little direct interaction with the Deutsche Bank Defendants."). The Complaint fails to allege any interaction of the Argon Outside directors[11] with Princeton or involvement in or awareness of what it was Argon was providing to Princeton. That certain Argon officers and employees may have interacted with Princeton does not make outside directors responsible for that conduct. *See Wash. House Condo. Ass'n of Unit Owners v. Daystar Sills, Inc.*, 2017 WL 3412079, *14 & n.113 (Del. Super. Ct. 2017) (directors not liable for actions of company "merely by virtue of his or her corporate position" unless he or she has "participated," "authorized or directed" those actions). Indeed, outsider directors have no obligation to carefully review the financials of companies on whose board they sit. *See Wert*, 2019 WL 1584563, *7 ("Delaware law also grants directors full protection from liability where they 'rely[ ] in good faith upon' advice provided by persons, such as lawyers, on matters the director 'reasonably believes are within such other person's professional or expert competence and who has been selected with reasonable care by or on behalf of the corporation.'"); *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 135 (Del. Ch. 2009) (same); *see also* Del. Code tit. 6, § 18-406 (same protections for LLC members and managers).

Princeton does not allege that Defendants who were investors in Argon Credit, including Margon, Little Owl, Triffler Trust, and Cardinal Trust, had a duty to disclose. In any event, merely being a company's member does not create a duty to disclose to that company's lender. *See Trusa v. Nepo*, 2017 Del. Ch. LEXIS 57, *29 (Del. Ch. 2017) (member of LLC has no general duty to disclose information to lender in an arm's length transaction). Other Defendants are even further removed. Glenora, JIU, and JPU have relationships with Little Owl, an investor in Argon Credit.

---

[11] Defendants Canfora, Triffler, Ferro, Kuhlman, Breitweiser and Faermark.

Still further removed – indeed completely unrelated – is RBC, which is not alleged to have had *any* involvement with either Argon entity, much less Princeton. In a transparent search for a deep-pocket, Princeton has sued RBC upon the less-than-wispy ground that its employee, Defendant Kuhlman, used his RBC email address in relation to his private work as a member of Argon Credit's Board of Managers. This does not create a duty to disclose. *See Zurich Cap. Markets Inc. v. Coglianese*, 332 F. Supp. 2d 1087, 1106 (N.D. Ill. 2004) (plaintiff failed to allege that investment company had a duty to disclose to third party alleged omissions of investment advisor).

Similarly, the Complaint provides no basis for extending the duty to disclose to the Argon entities' third-party contractors or third-party recipients of payments from Argon because, again, "parties to a contract … do not owe a fiduciary duty to one another." *Siemer*, 2008 U.S. Dist. LEXIS 25907, *20. Thus, a company's contractual counterparty (or the counterparty's officers) would have even less of a duty to disclose to another contractor of the company, *e.g.*, its lender. *See Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 401 (7th Cir. 2011) (no duty to disclose between parties absent fiduciary relationship). In this case, none of the third-party contractors or recipients of payments from Argon are alleged to have had any involvement in making the alleged concealments to Princeton. Accordingly, Princeton cannot establish a duty to disclose upon third-parties who were alleged to have been paid "diverted" "Secured Collateral." This includes Goldstein, Broadmark, Alhambra, Peraza, Merit, Margon, Cardinal Trust, and the Triffler Trust. Similarly, Defendants involved on the other side of the transactions involving the Spartan Loans – Wirzberger (an officer of a non-defendant entity, Exigent Capital), Kostiner (associated with FTAM, which purchased loans from Argon, and owner of Spartan Finance and Spartan SPV) – owed no fiduciary duty to Princeton and are not alleged to have been involved in making statements to Princeton. *See Parish*, 1995 WL 360468, *3.

13

Dated: April 14, 2021          Respectfully submitted,

By:    *s/ Scott Mendeloff*
        Scott Mendeloff
        Gabriel Aizenberg
        GREENBERG TRAURIG, LLP
        77 West Wacker Drive, Suite 3100
        Chicago, Illinois 60601
        Tel: (312) 456-8400
        Fax: (312) 456-8435
        mendeloffs@gtlaw.com
        aizenbergg@gtlaw.com

        *Attorneys for Defendants Bruce Breitweiser, Joseph Canfora, Cardinal Trust, Barry Edmonson, Byron Faermark, Peter Ferro, Margon LLC, Mark Triffler Trust, Mark Triffler, and Merit Gaming Management Group, LLC*

14

## <u>CERTIFICATE OF SERVICE</u>

I, David S. Repking, certify that on April 14, 2021, a true and correct copy of the foregoing was filed electronically through the Northern District of Illinois CM/ECF electronic filing system, which will send a notification of filing to all counsel of record

*/s/ David S. Repking*