## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

**FUND RECOVERY SERVICES, LLC**

        Plaintiff,

   v.

**RBC CAPITAL MARKETS, LLC et al.,**

        Defendants.

Case No. 1:20-cv-05730

## MEMORANDUM OF DEFENDANTS
## IN SUPPORT OF MOTION TO DISMISS RICO CLAIMS

**Foley & Lardner LLP**
321 N. Clark Street, Suite 3000
Chicago, Illinois 60654-4762
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
Michael J. Small (IL Bar No. 6207645)
William J. McKenna (IL Bar No. 3124763)
David B. Goroff (IL Bar No. 6190039)
msmall@foley.com
wmckenna@foley.com
dgoroff@foley.com

*Attorneys for Little Owl Argon, LLC, Glenora Company, James I. Uihlein and James P. Uihlein*

**Greenberg Traurig, LLP**
77 W. Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-8400
Gabriel Aizenberg
Scott T. Mendeloff
aizenbergg@gtlaw.com
mendeloffs@gtlaw.com

*Attorneys for Peter Ferro, Jr., Margon LLC, Joseph Canfora, Mark Triffler, Mark Triffler Trust, Bruce Breitweiser, Byron Faermark, Barry Edmonson, Cardinal Trust and Merit Gaming Management Group, L.P.*

**Cotsirilos, Tighe, Streicker, Pouolos & Campbell, Ltd.**
33 North Dearborn Street, Suite 600
Chicago, Illinois 60602
Telephone: (312) 263-0345
Terence H. Campbell
Eric S. Pruitt
tcampbell@cotsiriloslaw.com
epruitt@cotsiriloslaw.com

*Attorneys for John A. Kuhlman, Jr.*

**Spach Manahan O'Dell LLP**
12707 High Bluff Drive, Suite 200
San Diego, California 92130
Telephone: (858) 925-3391
Ryan Dennis O'Dell
rodell@smolawfirm.com

*Attorney for Berj Arakelian, B. Money Holdings, LLC and Bergarive, LLC*

**Abrahamson, Reed & Bilse**
8230 Hohman Avenue
Munster, Indiana 46321
Telephone: (219) 595-5306
Harold Abrahamson
aralawfirm@aol.com

*Attorney for Eric Schnosenberg*

**Bauch & Michaels, LLC**
53 W. Jackson Blvd., Suite 1115
Chicago, Illinois 60604
Telephone: (312) 588-5000
Paul M. Bauch
Carolina Y. Sales
pbauch@bmlawllc.com
csales@bmlawllc.com

*Attorneys for Sean Tomaszkiewicz and Blue Treble Solutions, LLC*

**Greenberg Traurig**
77 W. Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-1087
Steven Marc Malina
David Stephen Repking
malinas@gtlaw.com
repkingd@gtlaw.com

*Attorneys for RBC Capital Markets, LLC*

**Law Office of Peter S. Stamatis, PC**
1 E. Wacker Drive, Suite 2350
Chicago, Illinois 60601
Telephone: (312) 606-0045
Peter Sam Stamatis
peter@stamatislegal.com

and

**Law Offices of Steven S. Shonder**
1 E. Wacker Dr., Suite 2350
Chicago, Illinois 60601-2000
Telephone: (312) 612-5191
Steven S. Shonder
Steve@ShonderLegal.com

*Attorneys for Harry Madanyan*

**Nishay Kumar Sanan**
53 W. Jackson, Suite 1437
Chicago, Illinois 60604
Telephone: (312) 692-0360
Nishay K. Sanan
nsanan@aol.com

*Attorney for Bruce Goldstein and Alhambra Circle Partners, LLC*

**Jaszczuk P.C.**
30 S. Wacker Drive, Suite 2200
Chicago, Illinois 60606
Telephone: (312) 442-0366
Daniel I. Schlessinger
Seth Corthell
dschlessinger@jaszczuk.com
scorthell@jaszczuk.com

and

**Cohen Tauber Spievack & Wagner P.C.**
420 Lexington Avenue, Suite 2400
New York, New York 10170
Telephone: (212) 586-5800
Kenneth J. Rubinstein
Jackson S. Davis
krubinstein@ctswlaw.com
jdavis@ctswlaw.com

*Attorneys for Daniel Wirzberger*

**Gary Zumski**
4204 E. Frontage Road
Rolling Meadows, Illinois  60008
Globalwide08@gmail.com

*Pro Se*

**Barry Kostiner**
bkostiner@fintecham.com

*Pro Se*

**TABLE OF CONTENTS**

Page

I.  Introduction ................................................................................................... 1

II.  Factual Background .......................................................................................... 2

  A.  Princeton's Factual Allegations Are Misleading. .................................... 3

    1.  Plaintiff Misleadingly Lumps Together Disparate Defendants ................. 3

    2.  Princeton Pleads Fraud Solely On Information And Belief...................... 4

  B.  The So-Called Spartan Fraud. .................................................................. 4

    3.  Plaintiff Pursues Recoveries Which Argon Credit Already Sought
        Against A Defendant, Spartan SPV, Which Entered Bankruptcy .............. 6

    4.  Plaintiff Mischaracterizes Its Own Cited Emails...................................... 6

    5.  Plaintiff Sues Other Lenders To Argon Entities For Receiving
        Limited Interest Payments On Millions Owed ......................................... 7

III.  The RICO Claims Should Be Dismissed .......................................................... 8

  A.  Defendants Meet The Standards For Dismissal...................................... 8

  B.  Plaintiff Cannot Satisfy The Elements For Its RICO Claims Against
      Defendants .............................................................................................. 8

    1.  Plaintiff Cannot Allege That Defendants Committed Any Predicate
        Act............................................................................................................ 9

      a.  Plaintiff Cannot Allege That Defendants Acted As Part Of
          A Scheme To Defraud .................................................................. 9

      b.  Plaintiff Cannot Allege That Each Defendant Acted With
          Fraudulent Intent .......................................................................... 10

      c.  Plaintiff Cannot Allege That Each Defendant Used The
          Mail Or Wires "In Furtherance" Of Any Scheme ....................... 11

    2.  Plaintiff Cannot Plead That Defendants Engaged In A Pattern Of
        Racketeering ............................................................................................ 12

    3.  Plaintiff Cannot Plead Any RICO Enterprise ........................................ 17

      a.  Plaintiff Fails To Plead The Structure Of Any Enterprise ........... 17

b.    Plaintiff Fails To Allege Participation By Any Defendant In The Alleged Association-In-Fact Enterprise ................................ 19

c.    Plaintiff Conflates The "Person" And The "Enterprise" .............. 20

4.    Plaintiff Cannot Plead The Requisite Causation For Any RICO Claim.................................................................................................. 22

a.    Plaintiff Fails To Plead Proximate Causation............................... 22

b.    Plaintiff Cannot Allege "But For" Causation .............................. 24

5.    Plaintiff Has Not and Cannot Plead That Defendants Were Part Of Any RICO Conspiracy.................................................................... 24

a.    Plaintiff's Inability To Allege A RICO Claim Against Any Defendant Precludes Any Conspiracy Claim .............................. 25

b.    Plaintiff Cannot Allege That The Requisite Agreements Existed............................................................................................ 25

c.    Plaintiff Cannot Show Injury By An Overt Act In Violation Of RICO........................................................................................ 26

C.    If Plaintiff's RICO Claim Fails, There Is No Basis For Federal Jurisdiction....... 26

IV.    Conclusion ................................................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Auto. Accessories, Inc. v. Fishman*,
175 F. 3d 534 (7th Cir. 1999) ...........................................................................9, 25

*Am. Dental Ass'n v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010) ...............................................................................26

*Antonacci v. City of Chicago*,
640 F. App'x 553 (7th Cir. 2016) ............................................................................14

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006)..............................................................................................22, 23

*Baker v. IBP, Inc.*,
357 F.3d 685 (7th Cir. 2004) ....................................................................................21

*Ball v. Field*,
No. 90 C 4383, 1992 WL 57187 (N.D. Ill. Mar. 19, 1992) ...............................9, 11

*Beck v. Prupis*,
529 U.S. 494 (2000).....................................................................................................26

*Bell Atlantic Corp.* v. *Twombly*,
550 U.S. 544 (2007).......................................................................................................8

*Bell Enters. Venture v. Santanna Nat. Gas Corp.*,
No. 01 C 2212, 2002 WL 31269437 (N.D. Ill. Oct. 9, 2002) ................................11

*Binder v. Gillespie*,
184 F.3d 1059 (9th Cir. 1999) .................................................................................24

*U.S. ex rel. Bogina v. Medline Indus.*,
809 F.3d 365 (7th Cir. 2016) ......................................................................................1

*Boyle v. U.S.*,
536 U.S. 938 (2009).....................................................................................................17

*Brandon Apparel Grp., Inc. v. Quitman Mfg. Co.*,
52 F. Supp. 2d 913 (N.D. Ill. 1999) ........................................................................15

*Burdett v. Miller*,
957 F.2d 1375 (7th Cir. 1992) ...................................................................................17

*Carr v. Tillery*,
591 F.3d 909 (7th Cir. 2010) .....................................................................................24

*Chaudry v. Musleh*,
　No. 17 C 1813, 2017 WL 3872462 (N.D. Ill. Sept. 5, 2017)..................................................23

*Cook County v. MidCon Corp.*,
　574 F. Supp. 902 (N.D. Ill. 1983) *aff'd* 773 F.2d 892 (7th Cir. 1985) ....................................11

*Crichton v. Golden Rule Ins. Co.*,
　576 F.3d 392 (7th Cir. 2009) ...............................................................................1, 17, 18, 19

*D'Last Corp. v. Ugent*,
　863 F. Supp. 763 (N.D. Ill. 1994), *aff'd*, 51 F.3d 275 (7th Cir. 1995) ....................................18

*Decatur Ventures, LLC v. Stapleton Ventures, Inc.*,
　373 F. Supp. 2d 829 (S.D. Ind. 2005) ...................................................................................13

*DeGuelle v. Camilli*,
　664 F.3d. 192 (7th Cir. 2011) ........................................................................................25, 26

*Delta Star Elec., Inc. v. Taylor*,
　No S89-349, 1990 WL 293847 (N.D. Ind. Nov. 15, 1990) ....................................................11

*Domanus v. Locke Lord LLP*,
　847 F.3d 469 (7th Cir. 2017) ................................................................................................25

*Fitzgerald v. Chrysler Corp.*,
　116 F.3d 225 (7th Cir. 1997) ..................................................................................................8

*Gamboa v. Velez*,
　457 F.3d 703 (7th Cir. 2006) ................................................................................................15

*GE Inv. Pvt. Placement Partners II v. Parker*,
　247 F.3d 543 (4th Cir. 2001) ................................................................................................16

*Goren v. New Vision Int'l, Inc.*,
　156 F.3d 721 (7th Cir. 1998) ................................................................................................19

*Green v. Morningstar, Inc.*,
　No. 17 C 5652, 2018 WL 1378176 (N.D. Ill. Mar. 16, 2018) ................................................12

*Health Benefits Fund v. Walgreen Co.*,
　719 F.3d 849 (7th Cir. 2013) ................................................................................................25

*Hemi Group, LLC v. City of N.Y.*,
　559 U.S. 1 (2010)...................................................................................................................22

*Holmes v. SIPC*,
　503 U.S. 258 (1992)..................................................................................................22, 23, 24

*J.D. Marshall Int'l, Inc. v. Redstart, Inc.*,
　935 F.2d 815 (7th Cir. 1991) ................................................................................................14

*James Cape & Sons Co. v. PCC Const. Co.*,
  453 F.3d 396 (7th Cir. 2006) ...........................................................................23

*James Streibich Revocable Tr. of 2002 v. Flagstad*,
  No. 20 CV 2242, 2020 WL 6134980 (N.D. Ill. Oc. 19, 2020) ................................19

*Jennings v. Auto Meter Prods., Inc.*,
  495 F.3d 466 (7th Cir. 2007) ...........................................................12, 13, 14, 16

*Jennings v. Emry*,
  910 F.2d 1434 (7th Cir. 1990) ...........................................................................21

*Krakow Bus. Park v. Locke Lord, LLP*,
  135 F. Supp. 3d 770 (N.D. Ill. 2015) ...................................................................25

*Limestone Dev. Corp. v. Vill. of Lemont*,
  473 F. Supp. 2d 858 (N.D. Ill. 2007), *aff'd sub nom. Limestone Dev. Corp. v. Vill. of Lemont*,
  520 F.3d 797 (7th Cir. 2008) ...........................................................................22

*Lipin Enters. Inc. v. Lee*,
  803 F.2d 322 (7th Cir. 1986) ...........................................................................14

*Luis v. Smith Partners & Assocs., Ltd.*,
  No. 12 C 2922, 2012 WL 5077726 (N.D. Ill. Oct. 18, 2012) ................................14

*Menzies v. Seyfarth Shaw LLP*,
  943 F.3d (7th Cir. 2019) ...........................................................................8, 12, 13

*Midwest Grinding Co. v. Spitz*,
  976 F.2d 1016 (7th Cir. 1992) ...........................................................................8, 12

*Morgan v. Bank of Waukegan*,
  804 F.2d 970 (7th Cir. 1986) ...........................................................................13, 16

*Mt. Prospect State Bank v. Grossman*,
  No. 87 C 8546, 1989 WL 43620 (N.D. Ill. Feb. 24, 1989) ....................................11

*Natara Multimedia Grp. Inc. v. Carranza*,
  No. 14 C 2791, 2015 WL 3814653 (N.D. Ill. June 17, 2015) ................................15

*R.E. Davis Chem. Corp. v. Nalco Chem. Co.*,
  757 F. Supp. 1499 (N.D. Ill. 1990) (Rovner, J.) ...................................................11

*Richmond v. Nationwide Cassel L.P.*,
  52 F.3d 640 (7th Cir. 1995) ...........................................................................18

*Robinson v. City Colleges of Chicago*,
  656 F. Supp. 555 (N.D. Ill. 1987) ...................................................................11

*Roger Whitmore's Auto. Servs., Inc. v. Lake Cty., Illinois,*
    424 F.3d 659 (7th Cir. 2005) ........................................................................14, 15

*Ryan v. State,*
    No. 91 C 3725, 1999 WL 59982 (N.D. Ill. Feb. 3, 1999) .......................................24

*Schor v. Daley,*
    563 F. Supp. 2d 893 (N.D. Ill. 2008) .....................................................................26

*Slaney v. The Int'l Amateur Athletic Fed'n,*
    244 F.3d 580 (7th Cir. 2001) ............................................................................15, 25

*Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.,*
    884 F.3d 489 (4th Cir. 2018) ..................................................................................23

*Stachon v. United Consumers Club, Inc.,*
    229 F.3d 673 (7th Cir. 2000) ...................................................................17, 18, 21

*Talbot v. Robert Matthews Distrib. Co.,*
    961 F.2d 654 (7th Cir. 1992) ..................................................................................14

*In re Text Messaging Antitrust Litig.,*
    46 F. Supp. 3d 788 (N.D. Ill. 2014) (Kennelly, J.) ...............................................26

*Triumph Packaging Grp. v. Ward,*
    No. 11 C 7927, 2014 WL 949011 (N.D. Ill. Mar. 11, 2014) ..................................14

*U.S. Textiles, Inc. v. Anheuser-Busch Companies, Inc.,*
    911 F.2d 1261 (7th Cir. 1990) ..........................................................................14, 15

*United States v. Ji Chaoqun, No. 18 CR 611,*
    2020 WL 1689826 (N.D. Ill. Apr. 7, 2020) .............................................................9

*Vicom, Inc. v. Harbridge Merchant Servs., Inc.,*
    20 F.3d 771 (7th Cir. 1994) ....................................................................................16

**Statutes**

18 U.S.C.
    §1961 *et seq.* ..................................................................................... *passim*
    §1962(c) ......................................................................................................................8
    §1962(c), and a...........................................................................................................8
    §1962(d) ...............................................................................................................8, 25
    § 1964 .......................................................................................................................22

28 U.S.C.
    §1367(c)(3) ...............................................................................................................26

**Rules**

Fed. R. Civ. P. Rules 8 and 9 ................................................................................1, 2, 4

Fed. R. Civ. P. Rule 9 (b) ................................................................................2, 8, 10

Fed. R. Civ. P. Rule 12(b)(6) ...............................................................................8

## I.    <u>INTRODUCTION</u>

In its sprawling and incoherent complaint,[1] Plaintiff Fund Recovery Services ("<u>Plaintiff</u>")
sweeps in 37 Defendants.[2] But Plaintiff can allege no actionable wrong which any Defendant did,
much less that they engaged in racketeering in violation of the Racketeer Influenced Corrupt
Organizations Act, 18 U.S.C. §1961 *et seq.* ("<u>RICO</u>") or a conspiracy to violate RICO.

Plaintiff fails to plead each required element of a RICO claim. Plaintiff asserts that all
Defendants acted an association-in-fact enterprise, but the alleged facts belie this. Indeed, Plaintiff
absurdly asserts that each of the 37 Defendants is the "ringleader" of this non-existent operation
(¶139). Plaintiff identifies no hierarchy or structure; nothing Defendants did collectively. Many
Defendants were the Argon Entities' investors, shareholders or lenders who also suffered losses,
sometimes millions of dollars, due to the Argon Entities' failure.

Plaintiff has not and cannot allege that any Defendant committed a qualifying predicate
act, much less that each committed two acts, as RICO requires. Plaintiff's only alleged predicate
acts are for wire and mail fraud, but these fail. Plaintiff fails to plead Defendants' acted with the
requisite specific intent. Moreover, these claims, like all of Plaintiff's fraud-based claims (which
is every claim except for breach of contract and breach of guaranty) fail because they do not satisfy
Fed. R. Civ. P. ("<u>Rule</u>") 9(b). (*See also* Memo. of Law re: Rules 8 and 9 at 1-6.) Most glaringly,
Plaintiff admits that EVERY ALLEGATION it makes against every Defendant is based solely on
information and belief, acknowledging that it alleges "upon knowledge as to itself and its own acts
*and otherwise upon information and belief*." (Compl., p. 1).Yet the Seventh Circuit has held that
"[a]llegations based on 'information and belief' thus won't do in a fraud case- for 'on information
and belief' can mean as little as 'rumor has it that…'"*U.S. ex rel. Bogina v. Medline Indus.*, 809

---

[1] Paragraphs of the complaint ("<u>Complaint</u>") will be cited herein as ("¶_").
[2] Defendants use terms as defined in Plaintiff's Complaint.

F.3d 365, 370 (7th Cir. 2016).

Plaintiff's fraud allegations fail Rule 9(b) for multiple other reasons, including that many are conclusory, inconsistent, false or illogical. Moreover, most are based on failures to disclose, while Plaintiff pleads no basis for finding any Defendant had a duty to disclose. (*See also* Memo. of Law re: Rules 8 and 9.) Surely an outsider to a company has no duty to notify the company's lender if financials are inaccurate or assets are double pledged. Nor do a company's shareholders, and it would dramatically change the nature of American commerce to find otherwise. Individual officers and board members of an entity, too, have no personal duty to affirmatively disclose to a lender. Rather, if the Argon Entities' provided false information, then Plaintiff's claim is against the Argon Entities themselves, and Plaintiff knows this because it filed a proof of claim in their Bankruptcy based on the same facts.

In addition, Plaintiff cannot allege a "pattern," as RICO requires, because it cannot meet the standard for closed-ended continuity. Plaintiff's substantive RICO claim also fails because it cannot meet RICO's causation requirements, as to either proximate or "but for" causation.

Plaintiff's complete failure to plead a substantive RICO claim dooms its RICO conspiracy claim, and it additionally cannot plead the required agreement or overt act.

Because the deficiencies of Plaintiff's RICO claims are incurable, they should be dismissed with prejudice, and the Court should then dismiss Plaintiff's state law claims without prejudice for lack of subject matter jurisdiction.[3]

## II.     FACTUAL BACKGROUND

Plaintiff FRS is assignee of the rights of Princeton Alternative Income Fund, L.P. ("Princeton") in the "Fintech Loan Agreement" and related documents, including the so called

---

[3] Even if this Court considers Plaintiff's state law claims, each is fatally deficient, and should be dismissed with prejudice as well. Defendants are contemporaneously filing a memorandum supporting dismissal of Plaintiff's state law claims.

Secured Collateral of Argon Credit, LLC ("Argon Credit") and Argon X, LLC ("Argon X"), which Princeton defines as the "Argon Entities." (¶¶1, 20, 60, 73, 77, 84, 480-81). Following Princeton's declaration of default, the Argon Entities filed for bankruptcy in December 2016. (¶10).

### A. Princeton's Factual Allegations Are Misleading.

#### 1. Plaintiff Misleadingly Lumps Together Disparate Defendants

Plaintiff lumps together 25 Defendants into a group it misleadingly calls the "Argon Insiders." (¶17) This purportedly "include[s] those Defendants who were an owner, board member/manager and/or an executive officer of the Argon Entities" (¶15; *see also* ¶7 (noting it includes "the Argon Entities' investors..."), but sweeps more broadly than this. This grouping, for instance, includes Glenora, which is not an investor, officer or manager of an Argon Entity and is not alleged to be. Instead, it is alleged to be a part owner and manager *of an investor*, Little Owl. (¶45).[4] JIU and JPU, similarly, are individuals who held ownership interests in Little Owl. (¶¶46-47). Moreover, an investor is not fairly labeled here an "insider." Certainly a shareholder has no responsibility for operating a company. Thus, the lumping of shareholders with officers and board members is misleading. The Triffler Trust, Margon and Cardinal, like Little Owl, each held minority ownership interest in Argon Credit. (¶¶31, 48-49). Edmonson allegedly is a Trustee of Cardinal and executive and part-owner of Merit Gaming (¶50), which Princeton calls an "Argon Outsider." Noax and BMoney were members of Argon Credit. (¶309).

Similarly, Princeton artificially groups other Defendants into a hodgepodge it labels the "Argon Outsiders." Princeton claims this "include[s] those were owned by, affiliated with, managed by or executed self-dealing transactions with, any one or more of the Argon Entities and/or Argon Insiders who perpetrated and/or financially benefitted from the fraud." (¶18). But

---

[4] While Defendants must accept this well-pleaded allegation as true for purposes of a motion to dismiss, it, in fact, is a false description of Glenora. Glenora is neither a part owner nor manager of Little Owl. It is a manager which merely provides services to Little Owl, JPU and JIU.

this includes individuals who worked for or owned outside consultants to the Argon Entities, such as Goldstein. (¶¶19, 38). It includes individuals who worked for outside parties who dealt with certain Spartan Entities, such as Wirzberger. (¶¶19, 57). No fact shows these Defendants acted together. As defined, Argon Outsiders need not have known or done anything to face liability. (¶18).

For purposes of its purported RICO Factual Predicates and elsewhere, Plaintiff simply alleges that "Defendants" engaged in each of the alleged facts. (¶¶489-520). And Plaintiff asserts that each of the 37 Defendants is the "ringleader" of the alleged RICO scheme, naming certain Defendants, but then using the catch-all "other Defendants" to sweep in the rest. (¶139).

## 2. Princeton Pleads Fraud Solely On Information And Belief

Except for its own acts, Princeton pleads ITS ENTIRE COMPLAINT upon information and belief (Compl., p.1), and repeats that various allegations are on information and belief throughout its factual allegations. (*See* Memo. of Law re: Rules 8 and 9 at 7-9.)

## B. The So-Called Spartan Fraud.

The core of Princeton's Complaint is the so-called Spartan Fraud, which Princeton alleges consisted of: (i) selling the so-called Spartan Loans that Princeton claims was a portion of its Secured Collateral; and (ii) double-pledging those loans to Princeton and Spartan. (*See, e.g.*, ¶¶232-34, 513.) [Memo. of Law re: Spartan Fraud 23-24 and 30-37 explains: (i) why the Spartan Loans were not a part the Secured Collateral; and (ii) Princeton litigated the Spartan Fraud issue in another court and lost.]

According to Princeton, in May 2015, Defendant Kostiner, then an Argon Credit insider executive, allegedly formed FTAM, for which he is owner and managing member. (¶¶104,106,107). The alleged purpose was to permit Kostiner and other officers of Argon Credit to divert Secured Collateral – the so-called Spartan Loans – away from Argon Entities, , thereby

depriving PAIF of Secured Collateral. (¶¶109,115,125,182). Princeton asserts that Defendants Wolfe, Zumski, Arakelian, Madanyan, Sheybani, Schnosenberg "*and all other Argon Insiders and Argon Outsiders*" formed FTAM for this purpose, (¶115), but the notion that 37 Defendants formed this entity or shared this intent is patently false. Plaintiff does not allege what role anyone but Kostiner had in forming FTAM, any interest other Defendants had in FTAM, what, if any role, each played in FTAM's purchase of the Spartan Loans from Argon Credit, or what, if any, personal benefit each Defendant received.

Plaintiff alleges that individual Defendants caused $4.8 million of Consumer Loans of Argon Credit—the Spartan Loans--to be originated and sold to FTAM in August 2015 and the several months which followed. (¶116,129,160). Princeton further alleges that value for these loans was retained by "FTAM, Kostiner, Wolfe, Zumski *and other Argon Insiders and Argon Outsiders* who controlled the Spartan Entities, and controlled any funds that Argon Credit may have received from such sale." (¶117). But the failure to identify which Argon Insiders or Argon Outsiders purportedly received value from the funds Argon Credit received, or how they received this, means that this allegation, too, potentially sweeps in all 37 Defendants, even though Princeton describes no role any Defendant played (save Kostiner's formation of FTAM and the Spartan Entities).

Princeton then alleges that FTAM transferred the Spartan Loans to the "Spartan Entities" in what it terms the "Spartan Transactions," for purposes of re-pledging them to another secondary secured lender, Hamilton Funding, and that this was done without Princeton's knowledge. (¶137).

Despite knowing that the Spartan Transactions involved Secured Collateral, Princeton alleges that certain specific Defendants (*e.g.*, Wolfe, Kostiner, Arakelian) and "and others" (¶134), including allegedly Glenora, RBC Capital, JIU and JPU[5] (¶188), knew of and approved the Spartan Transactions. But Princeton alleges no facts supporting these "others" had such knowledge or

---

[5] None of the Defendants were officers, board members, or even investors in the Argon Entities.

owed any duty to Princeton.

### 3. Plaintiff Pursues Recoveries Which Argon Credit Already Sought Against A Defendant, Spartan SPV, Which Entered Bankruptcy

Princeton alleges that in October 2015, Defendant Spartan SPV entered into a Loan and Security Agreement with Hamilton Funding for a loan facility of up to $10 million, although there is no allegation that this amount was drawn. (¶210). After Spartan SPV fell into non-compliance on the loan in January 2016, Princeton alleges that Hamilton declared a default and accelerated the balance of the loan, ultimately taking control of the account and sweeping $705,000 on March 23, 2016, which Plaintiff alleges represented Princeton Secured Collateral, i.e., the Spartan Loans. (¶¶214,217-20). According to Princeton, Spartan SPV entered bankruptcy in 2016 and Argon Credit made a claim for funds owed in this bankruptcy. (¶¶229-30). This suggests suit against it as a bankrupt entity in this case may be both barred and, if not, futile. It also suggests that Plaintiff is pursuing recoveries Argon Credit already pursued.

### 4. Plaintiff Mischaracterizes Its Own Cited Emails.

In a section entitled "Various Defendants Knowingly Submitted False And Misleading Financial Reports To PAIF" (Compl. p. 48-60.), Princeton alleges that certain Defendants submitted misleading information to it but the examples it cites in the Complaint show that the information either was (i) not misleading or (ii) not sent to Princeton..

For example, Princeton starts this section with allegations about an email from an alleged Glenora representative that suggested a belief that the Argon Entities business model was "not sustainable" (which is an opinion) and which also requested information about the Spartan Transactions and the Argon Entities' accounts. (¶¶236-41). Princeton faults Glenora and those who received the email for not "step[ping] up" to affirmatively advise it of this belief. (¶241). Not only does Princeton fail to allege any fact supporting the notion that Glenora owed it any duty, it also mischaracterizes an outside entity's request for information from one party as being a fraud on that

party's lender.

Another example: Princeton asserts that all Argon Insiders knew that the Argon entities were insolvent but failed to disclose this to Princeton. (¶¶237, 243). Putting aside that the question of insolvency is a legal conclusion and not a "fact," Princeton's own citation shows this was not what all Defendants it defines as "Argon Insiders" believed. One such alleged "Argon Insider" is Kuhlman. (¶17). Yet, Plaintiff cites to a Kuhlman email – not sent to Princeton – where he states: (i) his belief that the Argon Entities' "business model works" (¶242); and (ii) shows that he wants to ensure the Argon Entities solvency by requesting information so Argon could "get to appoint (sic) where shareholders can take distributions without damaging Argon's balance sheet…." (¶298).

Finally, Princeton alleges that certain Defendants Glenora, Ferro, Kuhlman, Canfora, Faermark, Breitweiser, JIU, JPU obtained one set of information about "Doubtful Accounts" in September 2016 (¶263(iv)) but that unidentified "Argon Insiders" supposedly sent Princeton different information about such accounts in November 2016. (¶¶264-66.) Yet there is no allegation supporting the notion that these particular Defendants knew or had reason to know what information the unidentified "Argon Insiders" sent to Princeton. Nor is there any allegation that these particular Defendants owed any duty to Princeton.

**5. <u>Plaintiff Sues Other Lenders To Argon Entities For Receiving Limited Interest Payments On Millions Owed</u>**

With several Defendants—Little Owl, Margon, Triffler Trust and Cardinal—Princeton alleges that they: (a) loaned millions of dollars to the Argon Entities; (b) in connection with these transactions, were given membership interests in Argon Credit and the right to designate members of Argon Credit's Board of Managers; (c) they each designated such member or members, who were, in many cases, outside advisors to these entities; and (d) were paid certain amounts of interest on this financing, which Princeton claims in certain instances allegedly violated subordination

agreements these entities had with Argon Credit. (¶¶ 313-423).

Notably, Princeton does not dispute that these entities were never repaid millions of this financing and are thus, like it, suffered losses in the Argon Entities' collapse. Nor does Princeton allege any fact supporting the notion that, as lenders to or shareholders in Argon Credit, these entities owed another lender of Argon Credit any duty, including to disclose.

## III.    THE RICO CLAIMS SHOULD BE DISMISSED

### A.    Defendants Meet The Standards For Dismissal

Where, as here, a plaintiff seeks to plead RICO's pattern elements through predicate acts of mail or wire fraud, the heightened pleading requirements of Fed. R. Civ. P. 9(b) apply and require a plaintiff to do more than allege fraud generally. As detailed in the Rule 9(b) Brief which Defendants are contemporaneously filing this date, Plaintiff cannot satisfy Rule 9(b)'s standards. Plaintiff's RICO claims otherwise fail to meet the requirements of Rule 12(b)(6) and the plausibility standards of *Bell Atlantic Corp.* v. *Twombly,* 550 U.S. 544, 555 (2007).

### B.    Plaintiff Cannot Satisfy The Elements For Its RICO Claims Against Defendants

RICO is not intended to federalize common law claims, or be a surrogate for garden variety fraud claims. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992); *Menzies v. Seyfarth Shaw LLP*, 943 F.3d at 337 (7th Cir. 2019). Rather, RICO was designed for circumstances where criminals seize control of legitimate companies and use the companies' resources to perpetrate criminal acts. *Fitzgerald v. Chrysler Corp.,* 116 F.3d 225, 227 (7th Cir. 1997). Plaintiff alleges nothing of the sort here.

Plaintiff tries to state a substantive RICO claim against Defendants under 18 U.S.C. §1962(c), and a claim against them for conspiracy to violate RICO under 18 U.S.C. §1962(d). To state a Section 1962(c) claim, a plaintiff must show by a preponderance of the evidence: 1) conduct; 2) of an enterprise; 3) through a pattern 4) of racketeering activity. 18 U.S.C. §1962(c);

*see Am. Auto. Accessories, Inc. v. Fishman*, 175 F. 3d 534, 542 (7th Cir. 1999). Yet, Plaintiff cannot establish these elements as to any Defendant. Because Plaintiff's substantive RICO claim fails, its RICO conspiracy claim likewise fails, but that claim suffers additional defects of its own.

### 1. Plaintiff Cannot Allege That Defendants Committed Any Predicate Act

Plaintiff alleges as the "conduct" said to violate RICO that each Defendant engaged in mail or wire fraud. Yet, Plaintiff fails to plead its mail or wire fraud claims. To allege mail or wire fraud, a plaintiff must allege that: i) defendant engaged in a scheme to defraud; ii) with the intent to defraud; and iii) he used the mails or interstate wires in furtherance of the scheme. *See Am. Auto. Accessories Inc.*, 175 F. 3d 534. Plaintiff fails to establish that each Defendant was part of a scheme to defraud or acted with fraudulent intent or any way in which the wires and mail were used in furtherance of any fraud.

#### a. Plaintiff Cannot Allege That Defendants Acted As Part Of A Scheme To Defraud

A scheme to defraud is "a scheme that is intended to deceive or cheat another and to obtain money or property by means of materially false or fraudulent pretenses, representations or promises." *United States v. Ji Chaoqun, No. 18 CR 611,* 2020 WL 1689826, at *6 (N.D. Ill. Apr. 7, 2020) (quoting Seventh Circuit Criminal Pattern Jury Instructions (2012 ed.) (plus 2015-19 changes)). As then-District Judge Rovner stated:

> This Court has required that RICO plaintiffs who rely upon predicate acts of mail and wire fraud to support a pattern of racketeering activity "must do more than outline a scheme and make loose references to mailings and telephone calls; rather the plaintiff must be careful to allege such particulars as who initiated the communication, when the communications took place, and how they furthered the scheme to defraud."

*Ball v. Field*, No. 90 C 4383, 1992 WL 57187, at *12 (N.D. Ill. Mar. 19, 1992) (quoting *R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F. Supp. 1499, 1516 (N.D. Ill. 1990) (Rovner, J.)). Plaintiff fails each requirement. Plaintiff's allegations of mail and wire fraud are purely conclusory and

devoid of the required "particulars."

Thus, in Paragraph 491, Plaintiff asserts that "Defendants'" predicate acts, "included the widespread use of the United States mails and interstate wires to distribute false financial information of Princeton, through various methods and manners, and at different times, which Defendants knew to be false financial information." (¶491). Yet, Plaintiff identifies emails from only one Defendant, Schnosenberg, which cannot be tied to Defendants as a whole, and even as to these, does not state what was false or material or their role in the alleged fraud. Likewise, in Paragraph 492, Plaintiff sweepingly asserts that "Defendants facilitated through the execution of the sale of the Spartan Loans and other Spartan Transactions with FTAM and the Spartan Entities unlawful and deceptive conduct whereby Defendants knowingly, intentionally and falsely utilized and transferred through interstate means false financial information in order to delay Princeton from declaring an event as the secured lender." (¶492). Yet Plaintiff does not tie the vast majority of Defendants to any alleged use of the mails or wires to transmit any information whatsoever: does not connect such Defendants to FTAM, the sale of the Spartan Loans or other Spartan Transactions, and cites to no specific communication for this point.

Moreover, as emphasized in the Rule 9(b) Brief, fraud must be alleged *as to each defendant* with the particularity. Yet, as to the large majority of Defendants, Plaintiff not only alleges no affirmative representation, but no communication or any fraudulent conduct at all. To try to create the misimpression otherwise, Plaintiff improperly lumps all "Defendants" together and accuses the entire group of fraud. (*See, e.g.*, ¶139 (grouping 37 alleged persons and entities together accused of underlying fraud). Such a tactic fails.

        **b.**     <u>**Plaintiff Cannot Allege That Each Defendant Acted With Fraudulent Intent**</u>

"When pleading mail or wire fraud, specific intent and use of the mails or wires in

furtherance of the scheme must be alleged." *Robinson v. City Colleges of Chicago*, 656 F. Supp. 555, 558 (N.D. Ill. 1987). To show the requisite intent, there must be "deliberate fraud." *Bell Enters. Venture v. Santanna Nat. Gas Corp.*, No. 01 C 2212, 2002 WL 31269437, at *4 (N.D. Ill. Oct. 9, 2002). A plaintiff must provide a factual basis to give rise to a "strong inference" that a defendant possesses the requisite fraudulent intent. *Mt. Prospect State Bank v. Grossman*, No. 87 C 8546, 1989 WL 43620, at *3 (N.D. Ill. Feb. 24, 1989). As to this element, too, Plaintiff cannot allege that the vast majority of Defendants, including all who were not officers or managers of the Argon Entities, acted with fraudulent intent. Here, too, Judge Rovner's observation in *R.E. Davis Chem. Corp.*, 757 F. Supp. 1499, applies to the vast majority of Defendants here:

> To the extent that plaintiff has attempted to allege substantive acts of mail and wire fraud as the foundation for its § 1962(c) RICO claim, the Court observes that although plaintiff has made liberal use of the term "fraudulently," plaintiff has failed to expressly allege that any of the defendants acted with an intent to defraud. Some courts treat such an omission as fatal to allegations of mail and wire fraud.

757 F. Supp. at 1512.

### c. <u>Plaintiff Cannot Allege That Each Defendant Used The Mail Or Wires "In Furtherance" Of Any Scheme</u>

Finally, Plaintiff fails to state either mail and wire fraud claims because Plaintiff has not alleged how alleged mailings or interstate wire communications "furthered" any purported fraudulent scheme. *See Delta Star Elec., Inc. v. Taylor*, No S89-349, 1990 WL 293847, at *8 (N.D. Ind. Nov. 15, 1990); *Cook County v. MidCon Corp.*, 574 F. Supp. 902, 922 (N.D. Ill. 1983) *aff'd* 773 F.2d 892 (7th Cir. 1985) (rejecting RICO claim based on alleged false financials and transfer of assets because use of mails in furtherance of the fraud had not been alleged); *Ball*, 1992 WL 57187, at *12 (rejecting "plaintiffs' contention that 'it makes no difference that, for the most part, plaintiffs' allegations of mail and wire fraud do not directly allege the contents of the calls and letters and how each furthered the fraudulent scheme'").

**2.** __Plaintiff Cannot Plead That Defendants Engaged In A Pattern Of Racketeering__

The pattern requirement exists to give effect to Congress's clear intention that RICO target long-term criminal behavior, as opposed to more discrete acts of fraud. *Jennings v. Auto Meter Prods.*, *Inc.*, 495 F.3d 466, 473 (7th Cir. 2007) (citing *H.J. Inc. v. Northwestern Bell. Tel. Co.*, 492 U.S. 229, 242 (1989)). The Seventh Circuit has recently held that establishing the pattern requirement is "no easy feat." *Menzies*, 943 F.3d at 336 (finding that fraud associated with abusive tax shelter scheme directed at two sellers of financial services firm did not suffice to show a pattern under closed-ended approach where there was a single scheme, two victims and no threat of repetition of the conduct). The Seventh Circuit has previously held that even "a few instances of mail and wire fraud" are insufficient to show a pattern. *Jennings*, 495 F.3d at 475; *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1024-25 (7th Cir. 1992) (holding that the sending of hundreds of invoices through mails did not show a pattern because "mail and wire fraud allegations 'are unique among predicate acts' because the multiplicity of such acts 'may be no indication of the requisite continuity of the underlying fraudulent activity.' Consequently, we do 'not look favorably on many instances of mail and wire fraud to form a pattern.'").

To establish a pattern, the plaintiff must show that *each defendant* committed the requisite two predicate acts. *Green v. Morningstar, Inc.*, No. 17 C 5652, 2018 WL 1378176, at *8 (N.D. Ill. Mar. 16, 2018) ("[T]he complaint does not plausibly allege that each Defendant committed the requisite two predicate acts, rendering the existence of a pattern of activity overly speculative."). Moreover, the plaintiff must satisfy the "the so-called 'continuity plus relationship' test: the predicate acts must be related to one another (the relationship prong) and pose a threat of continued criminal activity (the continuity prong)." *Jennings,* 495 F.3d at 473 (quoting *H.J. Inc.*, 492 U.S. at 239).

Plaintiff does not and cannot plead continuity. The Seventh Circuit has long held that in

12

determining whether there is continuity, "'[r]elevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries.'" *Jennings*, 495 F.3d at 473 (quoting *Morgan v. Bank of Waukegan*, 804 F.2d 970, 976 (7th Cir. 1986)).

There is no possible allegation of an implied threat of continued criminal activity. The Argon Entities became chapter 7 debtors. Plaintiff thus tries—but fails—to plead a closed-ended theory of continuity, i.e. "criminal behavior that has come to a close but endured for such a substantial period of time 'that the duration and repetition of the criminal activity carries with it an implicit threat of continued criminal activity in the future.'" *Jennings,* 495 F.3d at 473 (citing *Midwest Grinding*, 976 F.2d at 1022-23); *Menzies*, 943 F.3d at 336.

Here, too, Plaintiff's lumping strategy fails, as courts reject that this suffices to plead a "pattern." *See Decatur Ventures, LLC v. Stapleton Ventures, Inc*., 373 F. Supp. 2d 829, 840 (S.D. Ind. 2005) ("With respect to the individual appraiser Defendants, the amended complaint fails to allege a pattern of racketeering activity with sufficient particularity. Matters are not helped by the fact that Plaintiffs routinely 'lump' the Defendants together in their attempt to plead predicate acts of mail and wire fraud.").Plaintiff also cannot meet the other *Morgan* factors:

**Duration**. Plaintiff purports to allege a pattern of racketeering activity consisting of 19 months between May 2015 and December 2016. (¶491 ("Defendants' predicate acts, beginning as early as May 2015 …"); ¶510 ("From May 2015 until December 2016, Defendants planned to steal and defraud Princeton of its Secured Collateral.").) This period of time – 19 months – is not "substantial" enough to satisfy close-ended continuity.

"The duration of the alleged racketeering activity is 'perhaps the most important element of RICO continuity.'" *Jennings*, 495 F.3d at 473–74 (quoting *Roger Whitmore's Auto. Servs., Inc. v. Lake Cty., Illinois*, 424 F.3d 659, 673 (7th Cir. 2005)). The Seventh Circuit has found continuity

lacking in closed-ended cases, even where alleged schemes lasted several years. *See Roger Whitmore's*, 424 F.3d at 673 (two-year scheme; "[a]lthough we have not employed a bright-line rule for how long a closed period must be to satisfy continuity, we have not hesitated to find that closed periods lasting several months to several years did not qualify as 'substantial' enough to satisfy continuity"); *Antonacci v. City of Chicago*, 640 F. App'x 553, 557 (7th Cir. 2016) (21-month scheme); *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 663 (7th Cir. 1992) (scheme lasting a "period of years" did not satisfy closed-ended continuity); *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 821 (7th Cir. 1991) (no continuity for 13-month scheme); *U.S. Textiles, Inc. v. Anheuser-Busch Companies, Inc.*, 911 F.2d 1261, 1266-69 (7th Cir. 1990) (no continuity for 16-month scheme). Here, the alleged activity during which Princeton was involved lasted 19 months, from May 2015 through December 2016.

**Single Victim**. Plaintiff alleges injuries to only one victim – itself. (*See, e.g.*, ¶¶489-497.) The Seventh Circuit has repeatedly found continuity lacking when only one victim is alleged in closed-ended cases. *See, e.g.*, *Antonacci*, 640 F. App'x at 557 (holding that 21-month scheme with single victim was insufficient as a matter of law to show a pattern of racketeering activity); *Jennings*, 495 F.3d at 476 (rejecting closed-ended continuity where the plaintiff "is the only identifiable individual who has suffered any potential injury"); *Lipin Enters. Inc. v. Lee*, 803 F.2d 322, 324 (7th Cir. 1986) (holding that "[t]he pattern requirement was intended to limit RICO to those cases in which racketeering acts are committed in a manner characterizing the defendant as a person who regularly commits such crimes" and finding plaintiff failed this showing); *see also Triumph Packaging Grp. v. Ward*, No. 11 C 7927, 2014 WL 949011, at *6 (N.D. Ill. Mar. 11, 2014) ("The fact that there was only one victim further weighs against Triumph's argument that it has established closed-ended continuity."); *Luis v. Smith Partners & Assocs., Ltd.*, No. 12 C 2922, 2012 WL 5077726, at *5 (N.D. Ill. Oct. 18, 2012) ("complaint's allegations are insufficient to

plead closed-ended continuity" where only victims were the two plaintiffs).

**Single Scheme/ No Variety**. Plaintiff fails to allege multiple schemes. The Seventh Circuit has repeatedly found that even multiple criminal acts in the service of a single scheme do not constitute a pattern. *See, e.g.*, *Gamboa v. Velez*, 457 F.3d 703, 709 (7th Cir. 2006) (rejecting theory of continuity based on argument that a "one-shot scheme took several years"); *Roger Whitmore's*, 424 F.3d at 674 (no continuity because plaintiff alleged only one scheme consisting of multiple predicate acts; "all of the predicate acts alleged were for the purpose of raising money for that campaign"); *U.S. Textiles, Inc.*, 911 F.2d at 1269 (no continuity; "we are presented with allegations of only one dishonest undertaking—i.e., the extortionate scheme by which Busch allegedly forced UST to assume the responsibility for a $2.55 million inventory shortage."); *Natara Multimedia Grp. Inc. v. Carranza*, No. 14 C 2791, 2015 WL 3814653, at *5 (N.D. Ill. June 17, 2015) (no continuity where "plaintiffs have alleged one overarching scheme designed to deprive concert producers of their contractual rights.") .

A plaintiff may not create multiple schemes by simply listing a series of mailings/wires resulting from the same scheme. *See, e.g.*, *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 599 (7th Cir. 2001) (single scheme is not a pattern of racketeering activity "simply because it required several acts of mail and wire fraud to inflict the" injury); *Brandon Apparel Grp., Inc. v. Quitman Mfg. Co.*, 52 F. Supp. 2d 913, 920 (N.D. Ill. 1999) ("Despite its attempts to argue otherwise, Quitman has in effect alleged only one fraudulent scheme: that Brandon double billed Wards to make it look like Brandon had more collateral to ensure that Quitman would continue to manufacture goods for Brandon. All of the alleged misrepresentations and fraudulent activity revolve around this one main scheme. Accordingly, this factor weighs against a finding of a 'pattern of racketeering activity.'").

What Plaintiff alleges as multiple schemes merely amount to multiple steps in a single

alleged scheme to deprive PAIF of the benefits of its Secured Collateral. Plaintiff alleges a single overarching scheme consisting of the provision to Plaintiff of various financial reports allegedly concealing the transfer of supposedly secured collateral from Argon. This is evident in the Complaint's two overarching Paragraphs: Paragraphs 7 ("…all of which activity was wrongfully concealed from Princeton as the secured lender") and 489 ("series of …racketeering acts predicated, at its core, [upon] concerted delivery of false financial information to Princeton as the secured Lender…"). Underscoring this is the fact that the two alleged "patterns of racketeering activity" – which presumably reflect Plaintiff's attempt to suggest two schemes – really involve the same scheme, *i.e.*, the presentation of financial reports to Plaintiff that conceal transfers of alleged Secured Collateral. One purported pattern involves the Spartan Loans while the other involves "Receivables and Collections." Yet the scheme is the same. Indeed, the Complaint grounds the alleged mail/wire fraud as to these upon a single list of emails, offering no basis upon which to determine which email advances which pattern. Finally, the type of activity involved here has been held insufficient to state a RICO claim. *See GE Inv. Pvt. Placement Partners II v. Parker*, 247 F.3d 543 (4th Cir. 2001) (finding defendants' long-term fraud designed to fraudulently induce a lender to keep making loans so that they could siphon off cash and inflate its value because they did not threaten ongoing criminal conduct and therefore did not establish requisite pattern).

Plaintiff similarly cannot plead a "variety" of predicate acts, as *Morgan* requires. The Seventh Circuit has repeatedly held that merely pleading multiple instances of mail or wire fraud does not suffice. *See Jennings v. Auto Meter Prods., Inc*., 495 F.3d 466, 475 (7th Cir. 2007) ("Jennings's complaint also lacks the requisite variety. Other than the evidence-tampering allegations, which, as we noted above, generally stem from acts that are also alleged to be mail or wire fraud, all we have here is a few instances of mail and wire fraud. We have repeatedly rejected RICO claims that rely so heavily on mail and wire fraud allegations to establish a pattern."); *Vicom,*

*Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 781 (7th Cir. 1994)("Although Vicom's prolixity makes it seem as though Vicom alleges innumerable predicate acts to support its causes of action ... [w]hen all the verbiage is weeded out, Vicom manages to allege a very few acts of mail or wire fraud in each count.").

### 3. Plaintiff Cannot Plead Any RICO Enterprise

Plaintiff purports to plead an association-in-fact RICO enterprise. Plaintiff fails to plead the elements of an association-in-fact enterprise or participation in the alleged enterprise. Moreover, Plaintiff fails to draw the necessary distinction between the alleged "person"—the defendant—and the enterprise. Under the United States Supreme Court's decision in *Boyle v. U.S.*, 536 U.S. 938 (2009), Plaintiff must show that a structure exists which has three features: 1) a purpose; 2) relationships among individuals associated with enterprise, including proof how participants came together and of their interpersonal relationships; and 3) longevity to permit association to pursue purpose of enterprise. Plaintiff's enterprise allegations fail as to Defendants for two reasons—*first*, Plaintiff has not and cannot plead the necessary hierarchy and structure to show an enterprise exists; and *second*, Plaintiff fails to allege any Defendants' involvement with the alleged association-in-fact enterprise.

### a. Plaintiff Fails To Plead The Structure Of Any Enterprise

In order to plead an associated-in-fact enterprise, there must be an organizational structure or hierarchy. *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 400 (7th Cir. 2009). "A RICO enterprise is more than a combination of persons who commit alleged predicate acts of racketeering; there must be an organization with a structure and goals separate from the predicate acts themselves." *Id.* (quotations and citations omitted). The enterprise must have some continuity and some differentiation of roles within it. *Burdett v. Miller*, 957 F.2d 1375, 1379 (7th Cir. 1992). The plaintiff must offer some kind of "command structure." *Stachon v. United Consumers Club,*

*Inc.*, 229 F.3d 673, 676 (7th Cir. 2000). A plaintiff may not merely lump together defendants and call them an enterprise. *D'Last Corp. v. Ugent*, 863 F. Supp. 763 (N.D. Ill. 1994), *aff'd*, 51 F.3d 275 (7th Cir. 1995) (competitors who engaged in conspiracy to injure competitor for purposes of RICO did not constitute an association-in-fact enterprise for purposes of RICO where it lacked ascertainable structure). Plaintiff fails to meet these standards. Plaintiff fails to allege which Defendant performed which alleged role; who led the effort or how Defendants functioned as a continuing unit.

In fact, in the place of a hierarchy, Plaintiff's allegations of leadership are nonsensical. For example, in addition to identifying five specific Defendants as RICO "ringleaders," Plaintiff alleges that "some" (unnamed) Argon Insiders and Argon Outsiders, and "other Defendants" (everyone else) were all "the ringleaders of the RICO Scheme and underlying fraud." (¶139). "Other Defendants" would mean there are 37 possible "ringleaders," a patent absurdity. This does not remotely allege the requisite "structure." Moreover, the Complaint's highly generalized allegations and lumping of all sorts of Defendants, as noted above, does not state an enterprise. *Richmond v. Nationwide Cassel L.P.,*, 52 F.3d 640 (7th Cir. 1995) (stringing together a list of entities is not enough to state an enterprise; car buyer's RICO claim began and ended with fraud of general and limited partner, and allegations did not show other participation by other members of alleged association-in-fact enterprise).

In the place of any allegation showing that any plausible associated-in-fact enterprise existed, Plaintiff substitutes a conclusory allegation that "[t]he Argon Entities had a distinct structure based on the essential operating functions of the Argon Entities and the particular role that each of Defendants had within and outside of the operations of the Argon Entities." (¶503.) But Plaintiff leaves Defendants—and the Court—to guess what those operating functions and particular roles are. This fails under *Crichton*, *Stachon*, and other controlling precedent.

18

**b. Plaintiff Fails To Allege Participation By Any Defendant In The Alleged Association-In-Fact Enterprise**

A plaintiff also must adequately allege that each defendant participated in the alleged RICO enterprise. "To satisfy RICO's conduct element, a plaintiff must show that each defendant 'participated in the operation or management of the enterprise itself' and played 'some part in directing the enterprise's affairs.'" *James Streibich Revocable Tr. of 2002 v. Flagstad*, No. 20 CV 2242, 2020 WL 6134980, at \*4 (N.D. Ill. Oc. 19, 2020) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 179, 183 (1993)); *see also Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998). "RICO liability will not attach for mere association with an enterprise; rather, one must 'somehow operate or manage the enterprise.'" *James Streibich,* 2020 WL 6134980, at \*4 (quoting *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 966 (7th Cir. 2000)). "Allegations that a defendant had a business relationship with the putative RICO enterprise or that a defendant performed services for that enterprise do not suffice." *Crichton*, 576 F.3d at 399. "The statute does not penalize tangential involvement. . ." *Id*.

Plaintiff asserts as its "RICO Scheme" that Defendants acted in concert in various capacities and times "through a series of overt and covert predatory and racketeering acts, predicated upon, at its core, concerted delivery of false financial information to the PAIF as the secured Lender." (¶489). ***The Complaint fails to allege any connection between many of the Defendants and the alleged delivery of false financial information to PAIF***. *see, e.g.,* ¶172 (allegation of concealment of Spartan transactions from Princeton identifies no defendants) and ***only surmises ("on information and belief") that the Argon Credit outside board members may have known that the Spartan Transactions and loans had not been disclosed to Princeton***. (¶195). In fact, ***the Complaint admits that the Argon outside directors may not have known of the Spartan transactions at the time they occurred ("were each aware at the time or subsequently became aware") and may not have known at all of the non-disclosure to Princeton. ("knew or***

19

*should have known" of the non-disclosure.) Id.* The Complaint never shows collective activity by those alleged to constitute the association-in-fact enterprise.

In fact, setting aside occasional improper and conclusory group allegations such as "the Argon Insiders and Argon Outsiders," "several Argon Insiders," or "other Defendants," the Complaint contains **no specific allegations as to any involvement in the alleged fraudulent activity** except by a subset of the Argon Credit officer/employees.[6] (*See, e.g.*, ¶104 (identifies four officers formed FTAM to advance the scheme "with knowledge of several other Argon Insiders"); ¶108-9 (only identifies four officers ("and others") regarding provision of access to loan documents to effectuate scheme); ¶111 (only three officers act to conceal access to loan documents); ¶112 ("establishing FTAM was the linchpin and keystone in the premediated fraud"); ¶115 (identifies six officers "and all other Argon Insiders and Argon Outsiders" that formed FTAM to divert Princeton secured collateral from Argon X Credit); ¶¶130-31 (one officer directed contractors how to handle collection on Spartan loans); ¶133 (five officers establish Spartan entities); ¶132 (one officer diverted Spartan servicing revenue to FTAM); ¶136 (servicing fee revenue absconded by the identified officers); ¶172 (allegation of concealment of Spartan transactions from Princeton identifies no defendants); ¶200 (three "Argon executive insiders" received daily reports regarding the Spartan Loans and "prominently participated in the Spartan Transactions"). Putting aside all of its other flaws, these lapses alone doom the Complaint as to all but the identified Spartan officers/employees.

### c. <u>Plaintiff Conflates The "Person" And The "Enterprise"</u>

Princeton fails to state an enterprise or participation in it, as a matter of law. Paragraph 499

---

[6] For example, as to participation in the alleged fraud, Defendant Ferro is alleged only to have been hired at Argon Credit in June 2016 (¶ 24), to have received Argon financial information, and to have reported the financial problems to Princeton in December 2016. (¶119) And Defendant Edmonson is only alleged to have been hired as a consultant to Argon Credit and to have received financial information on May 10 and August 30, 2016). (¶¶253, 269, 271).

purports to describe the operation of the RICO enterprise. It alleges that the enterprise consists of the same acts that are deemed to be the misconduct:

> Each of Defendants participated in the operation or management of the RICO enterprise because they engaged in acts that they knew would further the RICO Scheme, including the drafting, reviewing, revising and dissemination of fraudulent and misleading financial information (the "False Financials", the structuring and implementation of the Spartan Transactions, all in furtherance of the continued fraudulent misuse of Secured Collateral for the financial benefit of FTAM and the Spartan Entities (to the detriment of Princeton as the secured lender), all of which in turn perpetuated the RICO Enterprise.

A plaintiff must plead a "person"—RICO's name for the defendant in a case—which is different from the enterprise. *Baker v. IBP, Inc.*, 357 F.3d 685, 692 (7th Cir. 2004). The plaintiff must plead that each defendant participated in the enterprise's affairs, not just their own affairs. *Id.* For example, in *Jennings v. Emry*, 910 F.2d 1434 (7th Cir. 1990), the plaintiff attempted to name an associated-in-fact enterprise of the American Medical Association, Indiana Medical Association, various Indiana County Medical Associations, the office of the Indiana Attorney General, and various Indiana counties prosecutor's offices alleging they worked together to target chiropractors within the state. The Seventh Circuit found this failed, noting:

> The factual allegation section of the complaint alleges in great detail that various law enforcement personnel *did* certain things, *e.g.*, wrote memos, talked on the telephone, investigated people, prosecuted people, but it alleges little more than this and it completely fails to indicate that a structure existed through which the law enforcement personnel worked their purpose.

*Id*. at 1440. The Seventh Circuit explained:

> Although a pattern of racketeering activity may be the means by which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not what it does.

*Id.; see also Stachon,* 229 F.3d at 676-77 (plaintiff failed to allege that buying club, and its wholesalers, manufacturers and members over 21 years were enterprise based on allegations that buying club's franchisees made false representations to recruit members to purchase merchandise

from certain wholesalers and suppliers); *Limestone Dev. Corp. v. Vill. of Lemont*, 473 F. Supp. 2d 858 (N.D. Ill. 2007), *aff'd sub nom. Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797 (7th Cir. 2008) (finding that alleged RICO enterprise failed because plaintiff defined enterprise by what it did).

### 4. Plaintiff Cannot Plead The Requisite Causation For Any RICO Claim

The Supreme Court has interpreted the "by reason of" language in 18 U.S.C. § 1964 to require both "but for" causation and proximate causation. *Hemi Group, LLC v. City of N.Y.*, 559 U.S. 1 (2010) (plurality); *Holmes v. SIPC*, 503 U.S. 258 (1992). Plaintiff has not and cannot allege any direct link between any act of any Defendant and any alleged injury and does not even try to make specific allegations that Defendants directly caused it any harm. Instead, Plaintiff sweeps all Defendants together and asserts that:

> *As a result of the predatory, racketeering and unlawful acts of the various Defendants, as described herein, Princeton has been severely, directly and proximately damaged through the loss of Secured Collateral, lost profits, higher costs and loss of goodwill and name recognition in the consumer loan marketplace, from as early as 2017 through to the present.*

(¶537) (emphasis added). This does not suffice to plead causation, as RICO requires.

#### a. Plaintiff Fails To Plead Proximate Causation

For proximate cause, "[t]he central question to ask is whether the alleged violation *led directly* to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (emphasis added). "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Hemi*, 559 U.S. at 9 (quoting *Holmes*, 503 U.S. at 268). The Supreme Court has explained, "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors." *Holmes*, 503 U.S. at 269.

As noted, Plaintiff grounds its case upon diversion of Argon's assets (in which Plaintiff

alleges a security interest). *See supra* at 4, 20. Plaintiff thus complains only of injury by diversion of its allegedly secured collateral. This injury is clearly indirect. A RICO injury cannot be grounded upon injury to a third-party. In *Anza*, plaintiff alleged that its competitor defrauded New York by failing to pay sales taxes and thus was able to offer lower prices than plaintiff, whose price had to factor in the payment of such taxes. 547 U.S. at 454-55. The Supreme Court held that the direct victim was the State, and therefore plaintiff's RICO claim failed for lack of proximate cause. *Id.* at 458. *See also James Cape & Sons Co. v. PCC Const. Co.*, 453 F.3d 396, 403 (7th Cir. 2006) (affirming dismissal of RICO claim and holding that Wisconsin Department of Transportation and not plaintiff was direct victim of scheme and plaintiff failed to allege that its damages were proximately caused by the scheme); *Chaudry v. Musleh*, No. 17 C 1813, 2017 WL 3872462, at *2 (N.D. Ill. Sept. 5, 2017) (RICO claim dismissed because plaintiffs were not direct victims of fraud scheme and alleged injuries were caused not by alleged acts of mail and wire fraud but by "defendants' failure to disclose the unlawful nature of their coupon redemption operation and the true (nominal) value of legitimate coupon redemption to the overall business of Central Market").

An improper transfer of assets worked an injury upon Argon directly, and only indirectly affected Plaintiff by impairing its security interest. *See Holmes*, 503 U.S. at 268-69 (in adopting the proximate cause requirement, Court explained, "[under the common law,] a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover"); *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 494 (4th Cir. 2018) (construction subcontractor failed to allege proximately caused injury by insurer, where insurer's fraud allegedly caused reduction in building owner's insurance claim, this preventing full reimbursement to

building contractors including construction subcontractor).[7]

### b. Plaintiff Cannot Allege "But For" Causation

The inability to show "but for" causation, standing alone, is fatal to Plaintiff's RICO claim. *See, e.g.*, *Holmes,* 503 U.S. at 268; *Ryan v. State*, No. 91 C 3725, 1999 WL 59982, at *7 (N.D. Ill. Feb. 3, 1999). *See also Binder v. Gillespie*, 184 F.3d 1059, 1065-66 (9th Cir. 1999) (noting, in securities fraud context, that "the requirement of transaction causation is equivalent to the element of reliance, or, in tort liability terms, but-for causation."). Plaintiff does not plead the required "but for" causation as to many Defendants, as the Complaint alleges no involvement by many in the diversion of Plaintiff's alleged secured collateral or the making of any false statement to Plaintiff, or any reliance by Plaintiff on anything such Defendants did.

### 5. Plaintiff Has Not and Cannot Plead That Defendants Were Part Of Any RICO Conspiracy

Plaintiff has not and cannot allege a RICO conspiracy against Defendants. Plaintiff's RICO conspiracy count—Count Two—merely parrots the elements of a RICO conspiracy claim and

---

[7] Putting aside the fact that Plaintiff did not have a security interest in the items transferred, the transfers would, if anything, be contractual breaches, and not a basis for a RICO case. *See, e.g.*, *Carr v. Tillery*, 591 F.3d 909, 918 (7th Cir. 2010) (plaintiff failed to allege a predicate act based on breach of contract; "those allegations amount merely to a breach of contract claim, which cannot be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent, indeed criminal … For the most part the complaint simply renames breach of contract fraud or crime in an effort to satisfy the requirement of establishing 'predicate acts' required for a RICO claim. … If such renaming satisfies civil RICO, we shall see a wholesale migration of breach of contract suits into the federal courts … ."). The most prominent example of this involves a substantial portion of the Complaint, Paragraphs 309-423, relating to Argon Credit's payments to on notes to LITTLE OWL, MARGON, and the TRIFFLER and CARDINAL Trusts. Plaintiffs' theory is that Argon's payments here were no more than breaches of subordination agreements between Fintech Financial and these Defendants. (¶¶400-03) In fact, the Complaint recognizes that the challenged payments would have been proper but were not because Argon Credit was insolvent. (¶¶404-07, 410) Most significantly, the Complaint seeks to convert this contract breach into a fraud by asserting that LITTLE OWL, MARGON, and the TRIFFLER and CARDINAL trusts "knew or should have known – by virtue of an "Independent Report" of RSM – that Argon Credit was insolvent" at the time they received the payments. (¶410) Other allegations of the Complaint dooms this claim. The Complaint dates the Independent Report on September 6, 2016, and first mentions a draft of the report in the hands of the board on August 25, 2016 (¶¶62-63, 267), but the Complaint alleges that the latest of the payments to trusts LITTLE OWL, MARGON, and the TRIFFLER and CARDINAL trusts occurred on June 8, 2016. (¶¶328, 361, 381, 393).

alleges no facts which would support each element. (¶¶545-52).

**a.** **Plaintiff's Inability To Allege A RICO Claim Against Any Defendant Precludes Any Conspiracy Claim**

Because Plaintiff cannot allege a substantive RICO violation by any Defendant, it necessarily follows that it cannot state a RICO conspiracy claim. *See UFCW Unions & Emp'rs* Midwest *Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 856-57 (7th Cir. 2013) ("We have explained that 'the touchstone of liability under §1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute.'") (quoting *Goren,* 156 F.3d at 732.

Plaintiff cannot allege that any Defendant entered into the requisite agreement with another Defendant to violate RICO or show that it was injured by an overt act in violation of RICO.

**b.** **Plaintiff Cannot Allege That The Requisite Agreements Existed**

To allege a RICO conspiracy claim under 18 U.S.C §1962(d), a plaintiff must show *two separate agreements* 1) an agreement to "participate in the affairs of an enterprise through a pattern of racketeering activity," and 2) an agreement "that someone would commit at least two predicate acts [of racketeering] to accomplish th[e]se goals." *Slaney,* 244 F.3d at 600; *DeGuelle v. Camilli*, 664 F.3d. 192, 204 (7th Cir. 2011). "The absence of either of these [agreements] is fatal to the claim." *Domanus v. Locke Lord LLP*, 847 F.3d 469, 481 (7th Cir. 2017); *Am. Auto Accessories,* 175 F.3d at 543-44 ("[A] defendant who did not agree to … a pattern of racketeering activity is not in violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise, and neither is the defendant who agrees to the commission of two criminal acts but does not consent to the involvement of an enterprise.").

The existence of actual agreements to do both of these things is essential. This requires "a meeting of the minds" among each of the alleged conspirators. *Krakow Bus. Park v. Locke Lord*,

25

*LLP*, 135 F. Supp. 3d 770, 793 (N.D. Ill. 2015). It is not enough to assert that alleged co-conspirators engaged in similar conduct. *Cf. In re Text Messaging Antitrust Litig.*, 46 F. Supp. 3d 788, 802, 809-12 (N.D. Ill. 2014) (Kennelly, J.) (antitrust case) ("parallel conduct, even conduct consciously undertaken" is not enough; "'without … a meeting of the minds,' there can be no liability."). Such conduct must be inconsistent with a defendant's own economic self-interest. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1295 (11th Cir. 2010) (parallel conduct did not permit inference of RICO conspiracy where it did not "plausibly suggest that … Defendants ha[d] acted … inconsistent with the independent pursuit of their own economic self-interest.").

Plaintiff has not and cannot allege that any Defendant entered into any agreement with another Defendant to either obtain an interest in or participate in the affairs of an enterprise through a pattern of racketeering. No facts suggest a knowing meeting of the minds as to any conspiracy.

### c. Plaintiff Cannot Show Injury By An Overt Act In Violation Of RICO

Plaintiff must also allege that it suffered injury caused by an overt act that violates the RICO statute, *Beck v. Prupis*, 529 U.S. 494, 505-507 (2000), and that the overt act was the proximate cause of that injury. *DeGuelle,* 664 F.3d at 204-05. Plaintiff meets neither requirement. Plaintiff has not and cannot allege that Defendants knowingly engaged in any overt act which facilitated the activities of those who operated the alleged enterprise in an illegal manner and proximately caused injury to Plaintiff. The failure to show an enterprise and a pattern, which doom any possible RICO claim, also doom any claim for a conspiracy to violate RICO.

### C. If Plaintiff's RICO Claim Fails, There Is No Basis For Federal Jurisdiction

Plaintiff's RICO claims are its only federal claims and Plaintiff has only alleged federal question jurisdiction. If Plaintiff's RICO claim fails, all of Plaintiff's remaining claims are state law claims. Because this case is just beginning, it is not an appropriate candidate for the assertion of supplemental jurisdiction under 28 U.S.C. §1367(c)(3). *See Schor v. Daley*, 563 F. Supp. 2d

893 (N.D. Ill. 2008) ("Here, at the motion to dismiss stage, with little discovery having occurred, the presumption in favor of relinquishing federal jurisdiction applies.").

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiff's RICO claims be dismissed with prejudice.

Dated: April 14, 2021

Respectfully submitted,

/s/  David B. Goroff

**Foley & Lardner LLP**
321 N. Clark Street, Suite 3000
Chicago, Illinois 60654-4762
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
Michael J. Small (IL Bar No. 6207645)
William J. McKenna (IL Bar No. 3124763)
David B. Goroff (IL Bar No. 6190039)
msmall@foley.com
wmckenna@foley.com
dgoroff@foley.com

*Attorneys for Little Owl Argon, LLC, Glenora*
*Company, James I. Uihlein and James P. Uihlein*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document is being served by the court's ECF system to the designated counsel of record in the above-captioned action on this 14th day of April, 2021.

/s/  David B. Goroff
David B. Goroff