# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

**FUND RECOVERY SERVICES, LLC,**

Plaintiff,

v.

**RBC CAPITAL MARKETS, LLC et al.,**

Defendants.

**Case No. 1:20-cv-5730**

**Hon. Judge Matthew F. Kennelly**

---

## DEFENDANT DANIEL WIRZBERGER'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SANCTIONS PURSUANT TO RULE 11, F.R.C.P.

JASZCZUK P.C.
Daniel I. Schlessinger
30 S. Wacker Drive, Suite 2200
Chicago, Illinois 60606
(312) 442-0366
dschlessinger@jaszczuk.com

COHEN TAUBER SPIEVACK & WAGNER P.C.
Kenneth J. Rubinstein (admitted *pro hac vice*)
Jackson S. Davis (admitted *pro hac vice*)
420 Lexington Avenue, Suite 2400
New York, New York 10170
(212) 586-5800
krubinstein@ctswlaw.com

*Counsel to Daniel Wirzberger*

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................... ii

Preliminary Statement ............................................................................................................ 1

Relevant Facts and Procedural History .................................................................................. 3

Argument ............................................................................................................................... 14

I.    Applicable Legal Standard for Motion ........................................................................ 14

II.   Rule 11 Sanctions are Warranted Against FRS ........................................................... 15

III.  Rule 11 Sanctions Should be Imposed Because the Amended Complaint is Patently
      Devoid of Merit ........................................................................................................... 18

   A.   RICO and Fraud Claims ........................................................................................ 19

   B.   Conversion ............................................................................................................. 21

   C.   Tortious Interference with Contract ...................................................................... 22

   D.   Civil Conspiracy and Aiding and Abetting Claims .............................................. 23

   E.   Sanctions Should be Imposed Against Plaintiff and Counsel ............................... 24

Conclusion ............................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Macon Cty., Ill. ex rel. Ahola v. Merscorp, Inc.*,
  968 F. Supp. 2d 959 (C.D. Ill. 2013), *aff'd sub nom. Macon Cty., Ill. v. MERSCORP, Inc.*, 742 F.3d 711 (7th Cir. 2014) ...................................................23

*Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*,
  493 F.3d 841 (7th Cir. 2007) ...............................................................20

*Berwick Grain Co., Inc. v. Illinois Dept. of Agric.*,
  217 F.3d 502 (7th Cir. 2000) ...............................................................18, 24

*Bethesda Lutheran Homes & Servs., Inc. v. Born*,
  238 F.3d 853 (7th Cir. 2001) ...............................................................15

*Borsellino v. Goldman Sachs Grp., Inc.*,
  477 F.3d 502 (7th Cir. 2007) ...............................................................20, 22

*Bovinett v. HomeAdvisor, Inc.*,
  17 C 06229, 2020 WL 1330407 (N.D. Ill. Mar. 23, 2020) ...................................24

*Cannon v. Loyola Univ. of Chicago*,
  609 F. Supp. 1010 (N.D. Ill. 1985), *aff'd*, 784 F.2d 777 (7th Cir. 1986) ..............15

*Catz v. Chalker*,
  CIV 03-91-TUCFRZ, 2007 WL 3171383 (D. Ariz. Oct. 26, 2007) ...........................16

*City of E. St. Louis v. Cir. Ct. for Twentieth Jud. Cir., St. Clair County, Ill.*,
  986 F.2d 1142 (7th Cir. 1993) ...............................................................14

*Eilenfeldt v. United C.U.S.D. #304 Bd. of Educ.*,
  No. 412CV04029SLDJAG, 2013 WL 12248080 (C.D. Ill. Mar. 25, 2013) ....................19

*Gentleman v. Mass. Higher Educ. Assistance Corp.*,
  No. 16-CV-03096, 2019 WL 3776758 (N.D. Ill. Aug. 12, 2019), *appeal dismissed,* No. 19-3372, 2019 WL 8997659 (7th Cir. Dec. 6, 2019) .....................23

*Hefferman v. Bass*,
  467 F.3d 596 (7th Cir. 2006) ...............................................................24

*Janky v. Batistatos*,
  259 F.R.D. 373 (N.D. Ind. 2009) ...........................................................15

ii

*Javid v. Pub. Storage Pickup & Delivery, Inc.*,
  No. 1-17-1659, 2018 WL 4760837 (Ill. App. Ct. Sept. 28, 2018)..........................................21

*Kovitz Shifrin Nesbit, P.C. v. Rossiello*,
  392 Ill. App. 3d 1059 (2009) ...................................................................................................21

*Lee v. Criterion Ins. Co.*,
  659 F. Supp. 813 (S.D. Ga. 1987)...........................................................................................16

*Mallory v. Rush U. Med. Ctr.*,
  18 CV 4364, 2020 WL 6152670 (N.D. Ill. Oct. 20, 2020)......................................................24

*Matlin v. Spin Master Corp.*,
  979 F.3d 1177 (7th Cir. 2020) .................................................................................................16

*McLaughlin v. Bradlee*,
  602 F. Supp. 1412 (D.D.C. 1985), *aff'd*, 803 F.2d 1197 (D.C. Cir. 1986) .......................16, 17

*Midamines SPRL Ltd. v. KBC Bank N.V.*,
  No. 16 C 9429, 2018 WL 439211 (N.D. Ill. Jan. 16, 2018) ....................................................16

*NAR Bus. Park, LLC v. Ozark Auto. Distribs., LLC*,
  430 F. Supp. 3d 443 (N.D. Ill. 2019) .......................................................................................18

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
  631 F.3d 436 (7th Cir. 2011) ...................................................................................................20

*Pittsfield Dev., LLC v. Lynd*,
  No. 19-CV-01321, 2020 WL 6701104 (N.D. Ill. Nov. 13, 2020) ...........................................22

*Reynolds v. U.S. Capitol Police Bd.*,
  357 F. Supp. 2d 19 (D.D.C. 2004) ...........................................................................................17

*Rose Marine Transp., Inc. v. Kaiser Aluminum & Chem. Corp.*,
  762 F. Supp. 757 (N.D. Ill. 1991) ............................................................................................15

*Royce v. Michael R. Needle P.C.*,
  950 F.3d 939 (7th Cir. 2020) ..............................................................................................18, 24

*Sturdy v. Medtrak Educ. Servs. LLC*,
  No. 13-CV-3350, 2014 WL 2727200 (C.D. Ill. June 16, 2014).............................................21

*Thornwood, Inc. v. Jenner & Block*,
  799 N.E.2d 756 (Ill. App. Ct. 2003) .......................................................................................24

*In re Warren*,
  17-22544, 2019 WL 3995976 (Bankr. D. Md. Aug. 22, 2019) ..............................................17

iii

*Zahran v. Frankenmuth Mut. Ins. Co.*,
  94 C 4827, 1997 WL 53107 (N.D. Ill. Feb. 6, 1997)........................................................14, 16

iv

Daniel Wirzberger ("Wirzberger"), by and through his undersigned counsel, submits this memorandum of law in support of his motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11").

## Preliminary Statement

In the amended complaint, plaintiff Fund Recovery Services, LLC ("FRS"), as an assignee of Princeton Alternative Income Fund, L.P. ("Princeton"), asserts various claims for relief against Wirzberger based on allegations that Wirzberger (on behalf of his employer) negotiated a transaction whereby his employer became a senior lender to loans originated from Argon Credit to the detriment of FRS. The allegations in the complaint fall woefully short of establishing any *prima facie* claim against Wirzberger and are based on nothing more than rhetoric, speculation, and innuendo.

More egregious is that the claims made against Wirzberger herein are premised upon the *same* allegations raised by FRS over *four years ago* in legal proceedings involving Wirzberger's former employer (Hamilton Funding I, L.P. and Exigent Alternative Capital, collectively "Hamilton"[1]), in which proceedings FRS' claimed interest in loans originated by Argon Credit were completely rejected, while Hamilton's superior rights were formally recognized. In a proceeding before the Southern District of New York Bankruptcy Court, FRS propounded the same manufactured theories as it espouses herein, and the Bankruptcy Court approved a settlement recognizing *Hamilton's* rights as a secured creditor and granted *Hamilton* the right to receive the proceeds generated from the Argon loans.

Unsatisfied with the Bankruptcy Court's determination, FRS immediately commenced an action in New Jersey state court in which it sought to prevent Hamilton from access to the loan

---

[1] Neither Hamilton nor Exigent have been named as defendants herein.

proceeds, wherein it presented the *same arguments, based on the same allegations*, as it now asserts against Wirzberger. The New Jersey court agreed with the determination of the Bankruptcy Court and rejected FRS' arguments. This decision was then upheld by the New Jersey Appellate Division and the New Jersey Supreme Court.

Now, over four years after first stating the *identical* deficient legal and factual position, FRS asserts claims against Wirzberger, in his capacity as a "representative" of Hamilton. In wholly conclusory fashion, FRS lumps Wirzberger together with the other defendants and without the requisite particularity, alleges that he participated in a scheme to defraud FRS. However, beyond the fact that the causes of action asserted in the amended complaint are insufficiently pled[2], collateral estoppel precludes FRS from asserting the claims against Wirzberger because they are based on the identical discredited allegations that were asserted four years ago by FRS against Hamilton.

While it should have been obvious and apparent to FRS that the amended complaint merely attempted to revive stale claims that had been rejected numerous times by numerous courts -- and notwithstanding the fact that Defendants' motion to dismiss has conclusively demonstrated the deficiencies in both the initial and the amended pleadings -- counsel to Wirzberger notified FRS of the lack of merit to its claims and demanded that FRS withdraw the amended complaint under threat of sanctions pursuant to Rule 11, F.R.C.P. FRS has refused to voluntarily dismiss the claims against Wirzberger.

---

[2]     The myriad deficiencies in the pleadings are outlined in defendants' memoranda in support of the joint motions to dismiss the initial complaint (ECF Dkt. Nos. 103-107) and the amended complaint (ECF Dkt. Nos. 124-128) ("Defendants' Memoranda") and are incorporated by reference herein.

Accordingly, FRS and its counsel should be sanctioned for pursuing a frivolous action against Wirzberger and Wirzberger should be awarded the costs and fees he has incurred in defending this meritless suit.

**Relevant Facts and Procedural History**[3]

The facts and procedural history relevant to this motion are as follows:

***The Hamilton Transaction***

On October 31, 2015, Spartan Specialty Finance I SPV, LLC ("Spartan"), Hamilton, and Fintech Asset Management LLC ("Fintech") entered into a Loan and Security Agreement (the "LSA") and related agreements whereby, *inter alia*, Hamilton agreed to provide Spartan with a delayed draw term loan facility providing a minimum loan amount of $7,000,000.00 and up to a maximum loan amount of $10,000,000.00.  (Rubinstein Decl., Ex. 1 (Am. Compl.) ¶ 131; Ex. 2) Section 5.1 of the LSA granted Hamilton a security interest in all personal and real property of Spartan, including cash proceeds therefrom.  Such collateral included, among other things, unsecured consumer loans that were originated by Argon Credit LLC and sold to Spartan (the "Spartan Consumer Loans").[4]  (Rubinstein Decl., Ex. 2)

***Prior Proceedings in Bankruptcy and State Courts***

On June 29, 2016, Spartan filed a voluntary petition for bankruptcy relief in the Southern District of New York Bankruptcy Court (the "Bankruptcy Action").  (Rubinstein Decl., Ex. 3) Hamilton filed a $3,045,621.19 proof of claim in the Bankruptcy Action, which represented the

---

[3]  The facts and procedural history set forth herein are derived from the pleadings in this action and the exhibits annexed to the Declaration of Kenneth J. Rubinstein, dated August 11, 2021 (the "Rubinstein Decl."), submitted a spart of the motion.

[4]  Hamilton duly perfected its security interest in Spartan's assets and the proceeds therefrom. (Rubinstein Decl., Ex. 4)

unpaid principal and accrued interest under the LSA. (Rubinstein Decl., Ex. 5)  FRS did not file

any proof of claim in the Bankruptcy Action.  (Rubinstein Decl., Ex. 6)

On December 20, 2016, FRS appeared in the Bankruptcy Action and filed a motion

seeking to prohibit Spartan's use of cash collateral.  (Rubinstein Decl., Ex. 7)  In this motion,

FRS alleged that the loans sold by Argon Credit to Spartan were part of a loan portfolio secured

by FRS from Argon X (as originally pledged to FinTech, then to Princeton, and finally to

FRS).  (*Id.*)  FRS claimed that it had a perfected, first-priority security interest in the Spartan

Consumer Loans, which were originated by Argon Credit.[5]  Notably, FRS failed to provide any

documents evidencing an assignment of loans from Argon Credit (the originator of the loans

against whom FRS acknowledged that it did not hold a security interest) to Argon X (FRS'

borrower against whom FRS asserted a security interest).  (Rubinstein Decl., Ex. 8 at p. 2)

During a March 1, 2017 hearing, FRS represented that it had a security interest in the

Spartan Consumer Loans, but in response to questioning from the Bankruptcy Court, FRS could

not establish any assignment by Argon Credit of the underlying loans at issue to Argon X.

(Rubinstein Decl., Ex. 9 at pp. 9-14, 21-22, 25, 27-28)  In fact, the Master Consumer Loan

Purchase Agreement between Argon X (as purchaser) and Argon Credit and its subsidiaries (as

sellers) contained a form of assignment of consumer loans for the purpose of reflecting and

evidencing when and if loans were assigned by Argon Credit to Argon X to become part of the

---

[5]     In the Argon bankruptcy proceeding, FRS filed a proof of claim, *under penalty of perjury*,
wherein it noted that it is an *unsecured* creditor of Argon Credit.  (Rubinstein Decl., Ex. 11)

portfolio against which FRS held a security interest.[6]  (Rubinstein Decl., Ex. 10 at Exhibit 1)

FRS failed to produce an executed copy of the form of assignment and did not otherwise

demonstrate that the Spartan Consumer Loans (or any other loans) were actually assigned

pursuant to the agreement between Argon X and Argon Credit.  Consequently, at most, FRS held

a security interest against Argon X (there was no UCC filing by FRS against Argon Credit).

Furthermore, FRS had no privity with Spartan and did not have any security interest in the loans

at issue.  (Rubinstein Decl., Ex. 9 at p. 11)

Noting that FRS had failed to present evidence to establish its rights to the Spartan

Consumer Loans or their proceeds, the Bankruptcy Court afforded FRS further opportunities to

present evidence to support its claim of a security interest in the loans.  (Rubinstein Decl., Ex. 9

at pp. 10-16, 26-29)  FRS never presented any such evidence and never commenced any

adversary proceeding in the Bankruptcy Action seeking to establish its purported interests in

such loans.

On April 28, 2017, Spartan filed a motion to approve a settlement agreement with

Hamilton (the "Settlement Motion").  (Rubinstein Decl., Ex. 12)  Among other things, the

motion fixed the outstanding amount owed by Spartan to Hamilton and provided for a structured

repayment to Hamilton as Spartan's secured creditor.  Spartan also filed a motion to dismiss the

Bankruptcy Action on the grounds that the Settlement Motion resolved all outstanding issues

(the "Dismissal Motion").  (Rubinstein Decl., Ex. 13)  FRS opposed these motions on the same

---

[6]      Significantly, under this agreement, not every loan proffered from Argon Credit to Argon X was accepted by Argon X, as only qualifying loans could be proffered and Argon X (and therefore ultimately FRS) retained discretion to accept or reject any attempted sale of a consumer loan by Argon Credit to Argon X.  (Rubinstein Decl., Ex. 10 at pp. 5, 8)  This underscored the importance of the requirement for an assignment from Argon Credit to Argon X for any loan actually sold, so as to establish which loans were sold and which (by failure of an assignment) were not.

grounds as it has alleged herein as the basis for its claims against Wirzberger.[7]

During the hearing on the Settlement and Dismissal motions, the Bankruptcy Court again noted that FRS failed to present any evidence to support its claimed rights to and interests in the Spartan Consumer Loans and failed to establish any legal basis to the collateral that was subject of the settlement between Spartan and Hamilton.[8] (Rubinstein Decl., Ex. 15 at pp. 20-23) The Bankruptcy Court completely rejected FRS' opposition to the Settlement and Dismissal Motions, approved the Settlement Motion, and dismissed the Bankruptcy Action, determining that the settlement was "fair and reasonable" and was negotiated "at arm's length between adverse parties." (Rubinstein Decl., Ex. 15 at pp. 25-26)

Approximately one hour after the Bankruptcy Court orders were entered, FRS presented an *ex parte* application to the Superior Court of New Jersey seeking temporary restraints enjoining Hamilton from withdrawing or transferring any funds from Spartan. (Rubinstein

---

[7]     FRS argued – *as it does in the instant action*:

> neither the Debtor [Spartan] nor Hamilton is an unwitting, innocent party in this matter. The parties knew that the source of the Debtor's proposed loan portfolio was Argon Credit, LLC. Barry Kostiner knew the loans the Debtor acquired had been pledged as collateral to Argon's lender (FRS's predecessor in interest, Princeton Alternative Income Fund ("Princeton")), since Mr. Kostiner was Argon's Vice President of Capital Markets. *Hamilton knew the loans already had been pledged to Argon's lender because Hamilton used Princeton's loan documents as a model for its own loan to the Debtor and produced "redlined and clean [documents] off the Princeton doc," which it transmitted to the Debtor for their mutual use.…* FRS objects to the Settlement Motion and Dismissal Motion because the loans in the Portfolio constitute FRS's collateral for loans made to Argon X, and the Debtor and Hamilton seek to foreclose FRS's ability to assert its rights in that collateral. *Both the Debtor and Hamilton were clearly aware of the security interest, since the loan documentation for Hamilton's financing of Spartan was redlined by Hamilton against the "Princeton" loan documents.*

(Rubinstein Decl., Ex. 14 at p. 4 (emphasis added))

[8]     The Bankruptcy Court also noted that the true parties in interest, Argon Credit and Argon X (or their duly appointed bankruptcy trustee), never appeared in the Bankruptcy Action, did not assert any interest in the Spartan Consumer Loans, or pursue any claims against Spartan or Hamilton. (Rubinstein Decl., Ex. 15 at pp. 20-21, 25-26; *see also* Ex. 15 at p. 6)

Decl., Ex. 16)  In connection therewith, FRS commenced an action against Hamilton in the New Jersey Superior Court in which it asserted claims for unjust enrichment and conversion *based on the same allegations and arguments* that were rejected in the Bankruptcy Action.  (Rubinstein Decl., Ex. 17)  In its complaint (Rubinstein Decl., Ex. 17, ¶ 24), FRS alleged that:

> The transfer to Spartan and pledge to Hamilton were not made at arms-length, and, upon information and belief, were made to defraud Plaintiff of its collateral . . . At the time Defendant Spartan acquired the Portfolio, the Defendants knew that Princeton held a perfected security interest therein, but nevertheless purported to pledge the same collateral to Hamilton as if Plaintiffs lien was non-existent. That Defendants knew of Plaintiff's security interest in the Portfolio is evidenced by the fact that the Defendants used Plaintiff's loan documents as a model for their own financing transaction, even creating loan documents redlined against Plaintiffs original loan documents . . .

At the preliminary injunction hearing, the New Jersey Superior Court noted that FRS had failed to meet its burden for the relief it was seeking, but provided FRS with a further opportunity to present evidence to support its claimed "valid security interest" in the Spartan Consumer Loans, noting that FRS was getting another "bite at the apple" to "produce exhibits, documentary evidence" showing that it had a security interest in the loans and "why Judge Drain's signing of the order doesn't preclude the unjust enrichment and . . . conversion claim." (Rubinstein Decl., Ex. 18 at pp. 62-63)

Given another opportunity, FRS once again failed to remedy any of the deficiencies with its position.  At the subsequent hearing (following additional submissions by the parties), the New Jersey Court noted that the required assignment of loans from Argon Credit to Argon X "appears to be missing" and that FRS had filed an *un*secured claim in the Argon bankruptcy proceeding.  (Rubinstein Decl., Ex. 19 at pp. 36-37)  Consequently, the New Jersey Court determined that, despite ample opportunity, FRS had failed to demonstrate that it had any likelihood of success on the merits and entered an order which granted Hamilton's motion to

dissolve the temporary restraints and denied FRS' motion for preliminary injunctive relief.[9]

(Rubinstein Decl., Ex. 19 at pp. 35-39)

FRS then moved for a stay of this decision pending appeal before the New Jersey

Appellate Division, claiming that (*as it does herein*):

> Plaintiff learned, for the first time, that in November/December of 2015 approximately 1,000 loans and related proceeds (the "Portfolio") that had been previously pledged to Plaintiff were sold to Defendant Spartan. . . . To secure its debt, Spartan purportedly pledged the Portfolio to Hamilton. Defendants knew that Plaintiff held a perfected security interest in the Portfolio, as Defendants used Plaintiff's loan documents as a model for their own financing transaction, even creating loan documents redlined against Plaintiff's original loan documents.

(Rubinstein Decl., Ex. 20 at pp. 7-8)

Like the Bankruptcy Court and New Jersey Superior Court before it, the New Jersey

Appellate Division denied FRS' request for relief. Thereafter, the New Jersey Supreme Court

denied an identical request for a stay pending appeal. (Rubinstein Decl., Exs. 21-22) After

exhausting its efforts before a full slate of New Jersey courts, *in response to a demand to dismiss

the pending action under a threat of sanctions*, FRS voluntarily dismissed the New Jersey

complaint against Hamilton. (Rubinstein Decl., Ex. 23)

### The Instant Proceeding and Current Complaint

On September 25, 2020 (over three years later), FRS filed a scattershot complaint in

which it alleged that Wirzberger (along with numerous other defendants he had zero interaction

---

[9]     In pertinent part, the Court reasoned: "The argument essentially by the plaintiff is that the -- that they still have a security -- they have a security interest in these [loans]. The defendants claim that they don't have a security interest in these [loans], that they have paid fair market value for these [loans] when they purchased it from Spartan and that -- that in fact if -- and that they purchased it from Argon Credit and that there was no security interest by Argon Credit. The plaintiffs argue that Argon Credit guaranteed the payment by Argon X to the plaintiff's predecessor and that guarantee provided for the security interest. But the language in the guarantee doesn't say that, it says security interest in any loans that are assigned by Argon Credit to Argon X. And so the assignment appears to be missing. The proof of claim filed in Chicago by the plaintiffs against Argon Credit indicates that their loan is unsecured." (Rubinstein Decl., Ex. 19 at pp. 36-37)

with) conspired to defraud FRS through Spartan's acquisition of loans from Argon Credit. (ECF Dkt. No. 1) The underlying allegations in the complaint *were the exact same allegations* as FRS raised in the Bankruptcy Court and New Jersey court proceedings described above. ***Indeed (as is the case in the amended complaint), there were no allegations in the initial complaint that were not known or alleged by FRS in the prior legal proceedings described above.***

In the initial pleading, FRS asserted claims for civil RICO, conspiracy, fraud, conversion, tortious interference with contract, unjust enrichment, and restitution against Wirzberger, lumping him together with the other defendants in virtually all of the remaining allegations in the complaint *without identifying any specific act committed by Wirzberger*. Moreover, the complaint failed to connect the same dots that FRS failed to connect four years ago, as FRS remains without an assignment of the loans from Argon Credit (against whom FRS simply has an unsecured claim) to Argon X (against whom FRS asserts a security interest).

***Defendants' Motion to Dismiss the Initial Complaint***

On April 14, 2021, the defendants -- including Wirzberger -- filed various memoranda in support of a joint motion to dismiss the complaint. (*See* ECF Dkt. Nos. 104-107) The defendants' memoranda noted that the pleading was ripe for dismissal because, *inter alia*, (i) collateral estoppel precluded FRS from re-litigating the claims asserted in the Prior Actions; (ii) the fraud-based claims were not pleaded with the requisite specificity under Rule 9(b); (iii) FRS failed to assert the required elements for a viable RICO claim, warranting dismissal of the entire action on jurisdictional grounds; and (iv) the remaining state law claims were ill-pled.

On April 27, 2021, Wirzberger served notice that, if FRS did not withdraw the claims against him, he would seek sanctions pursuant to Rule 11.[10]  (Rubinstein Decl., Ex. 25)  Among other things, Wirzberger advised FRS that the allegations in the complaint were insufficient to establish any viable claim for relief against him and were also barred by the doctrine of collateral estoppel.  (*Id.* at pp. 12-16)

### The Amended Complaint

Rather than oppose the defendants' joint motion to dismiss, FRS filed an amended complaint.[11]  The amended pleading did nothing to actually address the pleading deficiencies identified by the defendants' group *or by Wirzberger in the Rule 11 notice* he previously provided.  Indeed, aside from minor, non-substantive revisions (including simply re-ordering paragraphs containing allegations concerning Wirzberger), the amended complaint contains just two new allegations concerning Wirzberger, but neither relates to any actions allegedly taken by him.  (*See* Am. Compl. ¶¶ 306, 312 -- alleging that defendants Cardinal Trust and Triffler Trust made certain payments in November 2015 "to demonstrate to WIRZBERGER in November 2015 that Argon Credit had received an equity investment from its existing investors")  Moreover, despite being fully aware of the numerous deficiencies in its pleading, FRS only

---

[10]    By letter dated January 12, 2021, FRS had previously been put on notice that its claims against Wirzberger were barred by collateral estoppel and were otherwise insufficiently alleged.  (Rubinstein Decl., Ex. 24)

[11]    With respect to Wirzberger, the amended complaint again alleges that Spartan (through its representative, defendant Kostiner) negotiated financing with Hamilton (through Wirzberger) as a senior debt holder and provided Hamilton with "template agreements that had formed the basis of the Fintech Loan Agreement to Exigent with instructions that these template agreements would form the underlying basis for the documents to be executed to support the Spartan Transactions." (Am. Compl. ¶¶ 112-15)  As it did in the prior proceedings from over four years ago, FRS alleges that Wirzberger knew that "the Spartan Transactions were intended to divest Princeton of its value in those Loan Proceeds being disbursed to Argon Credit through the Fintech Loan Agreement."  (Am. Compl. ¶ 115)

excised the claims for unjust enrichment and restitution; otherwise, the amended complaint remains the same as the initial pleading -- ill-pled and ripe for dismissal.

Consequently, on July 1, 2021, the defendants' group filed a joint motion to dismiss the amended complaint which relies on virtually the same legal arguments that were raised in their initial motion to dismiss.

In relevant part:

- Defendants' Memorandum of Law in Support of Motion to Dismiss Counts 1-2 As Time Barred, Counts 1-11 For Lack of Standing, and Spartan Fraud Claim on Collateral Estoppel Grounds (the "Collateral Estoppel Brief," ECF Dkt. No. 125) details why collateral estoppel applies to bar FRS from litigating claims and issues that were conclusively dismissed by the New Jersey courts.[12] (*See* ECF Dkt. No. 125 at pp. 30-35)

- Defendants' Memorandum of Law in Support of Motion to Dismiss RICO Claims (the "RICO Brief," ECF Dkt. No. 126) establishes that FRS failed to plead any of the required elements necessary to support a RICO claim, which not only warrants dismissal of the RICO claims, but requires dismissal of the entire action on jurisdictional grounds (as the amended complaint does not allege federal jurisdiction based on diversity).

- Defendants' Memorandum of Law in Support of Motion to Dismiss Complaint Regarding Plaintiff's Failure to Comply with Rules 8 and 9(b) and to Plead a Duty to Disclose (the "Fraud Brief," ECF Dkt. No. 127) demonstrates that FRS'

---

[12] The Collateral Estoppel Brief also demonstrates that (i) the civil RICO claims are barred by the applicable statute of limitations (ECF Dkt. No. 125 at pp. 1-6); and (ii) FRS lacks standing to assert any claim against Wirzberger (*Id.* at pp. 9-29).

fraud-based claims fail to comply with the requirements of Fed. R. Civ. P. 8 and 9(b) because, *inter alia*, the complaint fails to assert non-conclusory factual allegations that Wirzberger (or any other defendant) had the requisite intent to defraud FRS or its predecessor-in-interest, Princeton. (*See Id.* at pp. 2-3) And, the amended complaint is replete with impermissible "group pleading" and merely lumps Wirzberger together with a litany of unrelated defendants, without specifying his role in any purported fraud. (*See Id.* at pp. 3-10) Moreover, FRS impermissibly alleged numerous fraud allegations "upon information and belief" in the initial complaint and the amended complaint merely removed the phrase "upon information and belief," and thus, still runs afoul of Rule 9(b). (*See Id.* at pp. 10-13) Finally, because the theory of misconduct hinges upon non-disclosure, FRS was required to allege that Wirzberger had a duty to disclose, which it failed to do. (*See Id.* at pp. 13-18)

- Defendants' Memorandum of Law in Support of Motion to Dismiss Complaint Regarding State Law Claims ("State Claims Brief," ECF Dkt. No. 128) details how FRS failed to adequately allege any viable state law claim against Wirzberger.[13]

***Wirzberger Provided Notice to FRS Pursuant to Rule 11(c)(2)***

By letter dated January 12, 2021 (Rubinstein Decl., Ex. 24), FRS was first put on notice

---

[13]     Plaintiff's opposition to the motions to dismiss (ECF Dkt. No. 131) failed to remedy any of the noted fatal deficiencies raised in the joint motions or in the instant motion.

of the frivolous nature of the claims against Wirzberger.[14]  As noted above, on April 27, 2021, Wirzberger served a Rule 11 notice.  (Rubinstein Decl., Ex. 25)  After receiving the amended complaint, Wirzberger served a second Rule 11 notice.  (Rubinstein Decl., Ex. 26)  Plaintiff has refused to withdraw the amended complaint as against Wirzberger.

---

[14]     In this letter, FRS was advised that:

the allegations underlying the claims asserted against Mr. Wirzberger in this action were extensively litigated before various tribunals in 2017.  In each instance, FRS failed to convince the various courts of the merits of its position and the entity with which Mr. Wirzberger was affiliated (Hamilton Funding I, L.P. ("Hamilton")) prevailed in establishing its right to the proceeds of the loans which FRS (wrongfully) asserted a superior interest in.  Indeed, the *exact* allegations against Mr. Wirzberger in the current complaint were known and asserted by FRS in 2017 proceedings before the United States Bankruptcy Court for the Southern District of New York, the Superior Court of New Jersey (Bergen County), the New Jersey Appellate Division, and the Supreme Court of New Jersey.

The allegations in the current complaint -- which purportedly form the basis for claims of RICO, fraud, conversion, civil conspiracy, tortious interference, and unjust enrichment against Mr. Wirzberger -- are based on wholly conclusory assertions (which fall woefully short of the requisite pleading standards) that Mr. Wirzberger knew that the transactions between Spartan and Hamilton (which were legitimized through the Bankruptcy Court approval of the Spartan-Hamilton Settlement Agreement over FRS' objections) were intended to defraud FRS.  This is entirely based on the allegation that Mr. Wirzberger participated in Barry Kostiner's alleged fraudulent scheme as a result of Kostiner forwarding Princeton "template loan documents evidencing Princeton's security interest in Argon consumer loans, which were used in the Spartan-Hamilton transaction".

The *exact same allegations* were made by FRS in the proceedings over three years ago as the basis for why it claimed superior rights to Hamilton to the loans/proceeds and were considered and rejected by the various courts in which FRS litigated.  As you should be aware (FRS is certainly aware), the court determined that Hamilton held valid and enforceable rights and interests to the proceeds of the loans made by Spartan and FRS' arguments to the contrary were dismissed . . .

There are no new allegations that relate to Mr. Wirzberger in the current proceeding.  Moreover, the allegations in the complaint against Mr. Wirzberger do not come close to satisfying the pleading standards for the claims asserted.  Among the other arguments that are going to be asserted by the defendants in moving to dismiss the complaint (which may also apply to Mr. Wirzberger), if the case is not withdrawn, Mr. Wirzberger will raise these arguments in moving to dismiss the complaint.

Based on the foregoing, please be advised that if FRS does not withdraw the complaint against Mr. Wirzberger by *5:00 p.m. EST January 26, 2021*, Mr. Wirzberger will be moving to dismiss the complaint and will be seeking relief pursuant to Rule 11, F.R.C.P., against FRS, as well as against FRS' counsel.

Against this backdrop (and for the reasons set forth in Defendants' Memoranda), Wirzberger seeks sanctions against FRS and its counsel pursuant to Rule 11, F.R.C.P.

## <u>Argument</u>

I.    *Applicable Legal Standard*

Rule 11(b) provides that:

By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

**(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
**(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
**(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
**(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Pursuant to Rule 11(c)(1):

If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

Rule 11 "is designed to deter frivolous suits and tactics." *Zahran v. Frankenmuth Mut. Ins. Co.*, 94 C 4827, 1997 WL 53107, at *1 (N.D. Ill. Feb. 6, 1997); *see also City of E. St. Louis v. Cir. Ct. for Twentieth Jud. Cir., St. Clair County, Ill.*, 986 F.2d 1142, 1143 (7th Cir. 1993) ("Rule 11 establishes duties to both the opposing side and the legal system as a whole that are designed to curb needless expense and delays and to free the courts from litigation that strains scarce judicial resources").

## II.    *Rule 11 Sanctions are Warranted Against FRS*

Rule 11 sanctions are plainly warranted where, as here, a plaintiff refuses to withdraw a complaint that is completely without merit and subject to dismissal on a variety of grounds.  *See, e.g.*, *Bethesda Lutheran Homes & Servs., Inc. v. Born*, 238 F.3d 853, 859 (7th Cir. 2001) (reversing denial of sanctions where "it should have been obvious to any lawyer that relief was barred on multiple grounds"); *Janky v. Batistatos*, 259 F.R.D. 373, 382 (N.D. Ind. 2009) (awarding sanctions because the "entire lawsuit was not warranted by existing law or by a nonfrivolous argument" and "was brought for an improper purpose, both to harass Defendants and to needlessly increase the cost of litigation"); *Rose Marine Transp., Inc. v. Kaiser Aluminum & Chem. Corp.*, 762 F. Supp. 757, 764 (N.D. Ill. 1991) (awarding Rule 11 sanctions where plaintiff asserted claim based upon "untenable" legal theory).

Further, it is well-settled that sanctions under Rule 11 may be issued for filing claims that are barred by collateral estoppel and/or *res judicata*.  *See, e.g.*, *Cannon v. Loyola Univ. of Chicago*, 609 F. Supp. 1010, 1017 (N.D. Ill. 1985), *aff'd*, 784 F.2d 777 (7th Cir. 1986) ("Attorneys are expected, even required, to represent their clients' interests zealously. But they are also expected to know when to give up on an obviously lost cause. It should have been apparent to Cannon's counsel that Cannon's cause was dead. It should also have been apparent to him that bringing another action on the same facts would be barred by *res judicata,* collateral estoppel or both. We think that upon 'reasonable inquiry,' counsel would have found that this suit was not 'warranted by existing law.' Accordingly, we hold under Rule 11 that Cannon's counsel shall pay defendants' costs and attorney's fees incurred from litigating this motion to dismiss."); *Bethesda Lutheran Homes and Services, Inc. v. Born*, 238 F.3d 853, 859 (7th Cir. 2001) (reversing district court's denial of Rule 11 sanctions as "unreasonable" where "it should

have been obvious to any lawyer that relief was barred on multiple grounds, including res judicata"); *Matlin v. Spin Master Corp.*, 979 F.3d 1177, 1181–82 (7th Cir. 2020) ("Under Federal Rule of Civil Procedure 11, courts may sanction parties who file frivolous pleadings. For example, bringing a claim that is barred by *res judicata* is sanctionable. . . . In sum, because preclusion and the language of the contracts rendered Matlin and Warring's suit frivolous, the district court did not abuse its discretion in finding that '[o]pting to undertake this groundless lawsuit was objectively unreasonable and necessitate[d] sanctions.'"); *see also Zahran*, 1997 WL 53107, at *3 ("Based on the Zahrans' repeated attempts to reargue their already fully-litigated claims in this forum and others, we agree that imposition of sanctions may be the only way to deter them from future filings against these defendants arising out of these same occurrences."); *Midamines SPRL Ltd. v. KBC Bank N.V.*, No. 16 C 9429, 2018 WL 439211, at *9 (N.D. Ill. Jan. 16, 2018) ("Because this appears to be a textbook example of collateral estoppel, the Court concludes that there is a substantial question as to whether Abbas complied with his Rule 11 obligations when he filed the complaint on Midamines' behalf.").

Indeed, numerous courts have determined that Rule 11 sanctions are "especially appropriate" where claims are plainly precluded. *See, e.g., McLaughlin v. Bradlee*, 602 F. Supp. 1412, 1417 (D.D.C. 1985), *aff'd,* 803 F.2d 1197 (D.C. Cir. 1986) ("It is especially appropriate to impose sanctions in situations where the doctrines of *res judicata* and collateral estoppel plainly preclude relitigation of the suit."); *Catz v. Chalker*, CIV 03-91-TUCFRZ, 2007 WL 3171383, at *7 (D. Ariz. Oct. 26, 2007) ("It is especially appropriate to impose sanctions in situations where the doctrines of res judicata and collateral estoppel plainly preclude re-litigation of the suit. The imposition of sanctions is one of the few options available to a court to deter and punish people who relitigate cases hopelessly foreclosed.") (citation omitted); *Lee v. Criterion Ins. Co.*, 659 F.

Supp. 813, 821 (S.D. Ga. 1987) ("'Sanctions are especially appropriate in situations where the doctrines of *res judicata* and collateral estoppel plainly preclude relitigation of the suit.' The federal courts can ill afford the time required to dispose of such frivolous suits, and parties naturally have a right to be free from vexatious litigation over matters that have been conclusively settled in prior litigation." (quoting *McLaughlin*; citations omitted); *see also Reynolds v. U.S. Capitol Police Bd.*, 357 F. Supp. 2d 19, 24 (D.D.C. 2004) ("[W]here a party reiterates arguments that have already been unequivocally rejected by the Court, and its pleadings reflect a deliberate decision to ignore an opinion of the Court which is the controlling law of the case, sanctions are warranted under Rule 11."); *In re Warren*, 17-22544, 2019 WL 3995976, at *4 (Bankr. D. Md. Aug. 22, 2019) ("Rule 9011 sanctions are appropriate to address the attempted re-argument of issues already adjudicated. 'It is especially appropriate to impose sanctions in situations where the doctrines of *res judicata* and collateral estoppel plainly preclude relitigation of the suit.'") (quoting *McLaughlin*).

As demonstrated in the Collateral Estoppel Brief (ECF Dkt. No. 125 at pp. 30-35), and based on the facts set forth above, FRS is collaterally estopped from relitigating the claims against Wirzberger.[15] The claims against Wirzberger herein rely upon *identical* allegations that were previously considered and rejected by no less than four separate courts. The amended pleading does not -- because it cannot -- alter the conclusion that collateral estoppel applies here. Consequently, having been put on notice (on numerous occasions) that its claims against Wirzberger were without merit, sanctions should be awarded against FRS and its counsel.

---

[15] Any suggestion that collateral estoppel does not apply because only Wirzberger (and not Hamilton) was named as a defendant misses the mark. The allegations in the amended complaint plainly relate to Wirzberger's role as an employee of Hamilton; indeed, the allegations involving Wirzberger solely relate to his purported role facilitating the transaction for Hamilton, and not any action taken in an individual capacity.

17

### III. *Rule 11 Sanctions Should be Imposed Because the Amended Complaint is Patently Devoid of Merit*

The amended complaint falls woefully short of stating any *prima facie* claim for relief against Wirzberger.[16]  Such a frivolous pleading -- which is subject to dismissal for any host of reasons (*see, e.g.*, ECF Dkt. Nos. 126-28) and should not have been filed after reasonable inquiry -- warrants the imposition of sanctions against FRS and its counsel.  *See, e.g., Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 957–58 (7th Cir. 2020) ("Needle P.C. was not sanctioned because its position turned out to be wrong, but because it was frivolous, disregarding what anyone having taken a first-year contracts class could identify as the pivotal legal issues and utterly devoid of merit.") (quotations omitted); *Berwick Grain Co., Inc. v. Illinois Dept. of Agric.*, 217 F.3d 502, 504–05 (7th Cir. 2000) ("Frivolous or legally unreasonable arguments, then, may incur penalty, and for Rule 11 purposes a frivolous argument is simply one that is baseless or made without a reasonable and competent inquiry") (quotation and citations omitted).

---

[16]     The amended complaint asserts 11 claims against Wirzberger: (i) RICO; (ii) RICO conspiracy; (iii) fraud/intentional misrepresentation; (iv) aiding and abetting fraud/intentional misrepresentation; (v) fraudulent concealment; (vi) aiding and abetting fraudulent concealment; (vii) fraudulent inducement; (viii) conversion; (ix) aiding and abetting conversion; (x) civil conspiracy; and (xi) tortious interference with contractual relations.

      The amended complaint applies Illinois and/or Delaware law (Am. Compl. ¶¶ 1, 6, 574) which have no nexus to the allegations against Wirzberger.  Because the rambling allegations in the Complaint make a proper choice of law analysis impossible, and given that Illinois' choice-of-law rules apply Illinois law to tort claims unless there is an actual conflict, Wirzberger will apply Illinois law for the purposes of this motion.  *See, e.g., NAR Bus. Park, LLC v. Ozark Auto. Distribs., LLC*, 430 F. Supp. 3d 443, 451 n.8 (N.D. Ill. 2019) ("Illinois courts apply forum law by default, and a choice-of-law determination is required only when the moving party has established an actual conflict between state law.")  Regardless of which state's laws apply, the Complaint is ripe for dismissal.

## A. RICO and Fraud Claims

For the reasons set forth in the RICO, Fraud, and State Claims Briefs (*see* ECF Dkt. Nos. 126-28**)**, the RICO and fraud claims are deficient and should be dismissed. With respect to Wirzberger in particular, FRS (i) fails to allege any statement by Wirzberger (let alone a misstatement or omission) in connection with the purportedly fraudulent scheme (ECF Dkt. No. 128 at pp. 1-4); (ii) engages in impermissible "group pleading" by lumping Wirzberger together with other defendants, in violation of Rule 9(b)[17] (ECF Dkt. No. 127 at pp. 3-10); (iii) fails to allege that Wirzberger had a duty to disclose to FRS and, as such, he cannot be liable for any purported to failure to disclose (*id.* at pp. 13-18); (iv) is bereft of any non-conclusory allegation that Wirzberger had any intent to defraud FRS (ECF Dkt. No. 126 at pp. 12-13); (v) fails to allege that Wirzberger engaged in a pattern and practice of racketeering activity (*id.* at pp. 13-18); (vi) fails to allege any RICO enterprise existed at all, let alone that Wirzberger participated in such enterprise (*id.* at pp. 18- 25); and (vii) fails to allege that Wirzberger was a part of any RICO conspiracy (*id.* at 27-28).[18]

If anything, the amended complaint demonstrates that Wirzberger (as the representative of Hamilton) was a *victim* rather than a participant in any fraudulent scheme. (*See, e.g.*, Am. Compl. ¶ 192 ("KOSTINER, WOLFE, FTAM and other Argon Insiders were in effect going to 'double down' on the fraud already being committed against Princeton as the secured lender and

---

[17]     The lumping of the defendants together also warrants dismissal under Rule 8(a), F.R.C.P. *See, e.g., Eilenfeldt v. United C.U.S.D. #304 Bd. of Educ.*, No. 412CV04029SLDJAG, 2013 WL 12248080, at *3 (C.D. Ill. Mar. 25, 2013) ("By continually lumping "the Defendants" together Eilenfeldt violates Rule 8(a)'s requirement that she give the Defendants fair notice of the claims against them, because she has deprived the Defendants of the ability to determine which of Eilenfeldt's allegations are being made against them and which are not.").

[18]     Beyond that, because the amended complaint fails to allege a viable RICO claim, there is no basis for federal jurisdiction of the claims alleged against Wirzberger. (ECF Dkt. No. 126 at p. 29.)

now commit additional fraud against Hamilton Funding by transferring the Spartan Loans back to Argon Credit."); Am. Compl. ¶ 193 ("The plan to transfer the Spartan Loans back to Argon Credit was an additional fraudulent plan to hide those Spartan Loan assets from Hamilton Funding and prevent Hamilton Funding from continuing to sweep the Spartan Bank Account."))

Beyond that, because each and every claim against Wirzberger hinges on, and is explicitly premised upon, the same deficient fraud allegations they are required to be pled with specificity under Rule 9(b), which they fall woefully short of satisfying. *See, e.g., Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507–08 (7th Cir. 2007) ("Although claims of interference with economic advantage, interference with fiduciary relationship, and civil conspiracy are not by definition fraudulent torts, Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations. A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements.") (citations omitted).

And, because the civil RICO and fraud claims are deficient and subject to dismissal, each of the remaining claims should be similarly dismissed. *See, e.g., Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447–48 (7th Cir. 2011) ("it is allegations of fraud, not claims of fraud, to which Rule 9(b) applies. . . . 'when the plaintiff's particular theory of unjust enrichment is based on alleged fraudulent dealings and we reject the plaintiff's claims that those dealings, indeed, *were* fraudulent, the theory of unjust enrichment that the plaintiff has pursued is no longer viable.'") (*quoting Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007).

### B. Conversion[19]

FRS' claim for conversion claim is based on the same allegations as its fraud claim and should therefore be dismissed as well.[20]  (Am. Compl. ¶ 524)

The conversion claim should also be dismissed because there is no allegation that *Wirzberger* individually took possession of any property that FRS has any conceivable claim over.  *See, e.g.*, *Sturdy v. Medtrak Educ. Servs. LLC*, No. 13-CV-3350, 2014 WL 2727200, at *4 (C.D. Ill. June 16, 2014) (elements for conversion claim are: "(1) [the plaintiff] has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property.").  Even if the allegations concerning Hamilton's alleged wrongful possession somehow extended to Wirzberger, it would be meaningless as the Bankruptcy Court and entire slate of New Jersey state courts have already determined that Hamilton held valid and enforceable rights and interests to the Spartan loans.  Consequently, Hamilton's possession could not possibly be deemed to be "wrongful and without authorization."  *See, e.g.*, *Kovitz Shifrin Nesbit, P.C. v. Rossiello*, 392 Ill. App. 3d 1059, 1066 (2009) (dismissing conversion counterclaim where possession of the relevant funds was not wrongful)

Moreover, FRS cannot demonstrate that it held "superior rights" to the Spartan Consumer Loans as that position has already been completely rejected in the prior proceedings in the Bankruptcy Court and New Jersey courts.  *See supra*; *see also Javid v. Pub. Storage Pickup &*

---

[19]     As noted, FRS previously asserted a claim for conversion against Hamilton in the New Jersey state court action in 2017, which was dismissed under threat of a motion for sanctions.

[20]     The conversion and aiding and abetting conversion claims against Wirzberger are subject to dismissal for the reasons set forth in the State Claims Brief.  (ECF Dkt. No. 128 at pp. 6-10)

*Delivery, Inc.*, No. 1-17-1659, 2018 WL 4760837, at *4 (Ill. App. Ct. Sept. 28, 2018) (denying conversion claim where plaintiff did not have "absolute and unconditional right to immediate possession of the property").

### C. Tortious Interference with Contract

As with the other claims, the tortious interference claim against Wirzberger is premised on alleged fraud and should therefore be dismissed.[21] (Am. Compl. ¶¶ 547, 548 ("Defendants knew or should have known that the fraud that Defendants were either committing or aiding and abetting the commission of, was purposefully and intentionally interfering with the Financial Covenants . . . agreed to by the Argon Entities…"))

Furthermore, there are no allegations in the Complaint that Wirzberger had any intention to cause the Argon Entities to breach any agreement. *See, e.g.*, *Pittsfield Dev., LLC v. Lynd*, No. 19-CV-01321, 2020 WL 6701104, at *6 (N.D. Ill. Nov. 13, 2020) ("To state a claim for tortious interference with contract, the plaintiff must allege: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contractual relationship between the plaintiff and another; (3) the defendant's intentional and unjustifiable inducement of a breach of the contract; (4) a breach of contract by the other caused by the defendant's wrongful acts; and (5) damage to the plaintiff.").

At most, FRS contends that Wirzberger received form loan documents from Kostiner and that Hamilton may have used such documents as a template from which to prepare its own loan documents, but there is no allegation detailing how or why using a template legal document could possibly be fraudulent. *See, e.g.*, *Borsellino*, 477 F.3d at 508 ("even accepting all of the

---

[21] The tortious interference claim additionally fails for the reasons set forth in the State Claims Brief. (ECF Dkt. No. 128 at p. 11)

plaintiffs' allegations at face value, there was no interference by the defendant that could have induced a breach or termination of Borsellino's expectancy. In other words, the complaint fails to describe any sort of plausible 'what' of the fraud.").  And, there are no non-conclusory allegations that *Wirzberger* caused Argon to breach any contract with FRS.  If anything, the allegation is that *Kostiner* was architect of any such scheme and duped Hamilton in the process. (Am. Compl. ¶¶ 192-193)

As a final point, it is clear from the prior proceedings that neither Wirzberger nor Hamilton caused any breach of the loan documents as the courts have already determined that the Spartan Consumer Loans were *not* double-pledged.

### D.  Civil Conspiracy and Aiding and Abetting Claims

FRS' civil conspiracy and aiding and abetting claims should be dismissed because, as described above, the underlying claims are subject to dismissal.  *See, e.g., Macon Cty., Ill. ex rel. Ahola v. Merscorp, Inc.*, 968 F. Supp. 2d 959, 971–72 (C.D. Ill. 2013), *aff'd sub nom. Macon Cty., Ill. v. MERSCORP, Inc.*, 742 F.3d 711 (7th Cir. 2014) ("The gist of a civil action for conspiracy is not the conspiracy itself, but the wrongful acts done in furtherance of the conspiracy. If the underlying claim is dismissed, then the conspiracy claim must also fail.") (citations omitted); *Gentleman v. Mass. Higher Educ. Assistance Corp.*, No. 16-CV-03096, 2019 WL 3776758, at *10 (N.D. Ill. Aug. 12, 2019), *appeal dismissed,* No. 19-3372, 2019 WL 8997659 (7th Cir. Dec. 6, 2019) ("Where the underlying claim is dismissed, both conspiracy and aiding and abetting claims must also fail.").

Even if FRS asserted viable claims for relief (and it has not), these claims nonetheless would be subject to dismissal because there is no non-conclusory allegation that Wirzberger was aware of the purported fraud, let alone that Wirzberger knowingly and substantially assisted in

any fraud.  *See, e.g.*, *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006); *see also Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 767 (Ill. App. Ct. 2003).

### E.  Sanctions Should be Imposed Against Plaintiff and Counsel

For the reasons set forth above, as well as in Defendants' Memoranda, FRS' pleading is unquestionably frivolous and subject to dismissal.  Because the amended complaint should not have been filed had there been a reasonable inquiry conducted by FRS and its counsel, the imposition of sanctions against FRS and its counsel is warranted.  *See, e.g.*, *Royce*, 950 F.3d at 957–58; *Berwick Grain Co.*, 217 F.3d at 504–05.

Accordingly, sanctions consisting of Wirzberger's costs and expenses associated with responding to FRS' frivolous pleadings and the filing of the instant Rule 11 motion should be imposed against FRS and its counsel.[22]  *See, e.g.*, Fed. R. Civ. P. 11(c)(4) ("The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."); *Mallory v. Rush U. Med. Ctr.*, 18 CV 4364, 2020 WL 6152670, at *1 (N.D. Ill. Oct. 20, 2020) ("If an attorney violates the requirements of Rule 11(b), a court may impose appropriate sanctions, including "appropriate attorneys' fees incurred as a direct result of the violation," and award attorney's fees and expenses associated with opposing a motion that violated Rule 11 and the preparation of the Rule 11 motion) (quotations omitted); *Bovinett v. HomeAdvisor, Inc.*, 17 C 06229, 2020 WL 1330407, at *4 (N.D. Ill. Mar. 23, 2020) (a "[v]iolation of [Rule 11] is grounds for the imposition of an appropriate sanction, which may include payment to the movant of part

---

[22]     Should the Court determine that the imposition of sanctions is appropriate, Wirzberger respectfully requests permission to submit an application for fees and costs.

or all of the reasonable attorney's fees and other expenses directly resulting from the violation," and awarding attorney's fees and costs relating to the filing of a motion to dismiss frivolous claims asserted in the complaint and the Rule 11 motion) (quotations omitted).

## <u>Conclusion</u>

Based on the foregoing, Wirzberger requests that the Court enter an order imposing sanctions pursuant to Rule 11 against FRS and its counsel, together with such other and further as the Court may deem just and proper.

Dated: August 11, 2021

JASZCZUK P.C.

By: /s/ Daniel I. Schlessinger
     Daniel I. Schlessinger
30 S. Wacker Drive, Suite 2200
Chicago, Illinois 60606
(312) 442-0366
dschlessinger@jaszczuk.com

COHEN TAUBER SPIEVACK & WAGNER P.C.
Kenneth J. Rubinstein (admitted *pro hac vice*)
Jackson S. Davis (admitted *pro hac vice*)
420 Lexington Avenue, Suite 2400
New York, New York 10170
(212) 586-5800
krubinstein@ctswlaw.com

*Counsel to Daniel Wirzberger*

{00451471.DOCX; 7}