UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FUND RECOVERY SERVICES, LLC**

        Plaintiff,

  v.

**RBC CAPITAL MARKETS, LLC et al.**,

        Defendants.

Case No. 1:20-cv-05730

**Hon. Judge Matthew F. Kennelly**

## SURREPLY MEMORANDUM OF DEFENDANTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE REVISED SECOND AMENDED COMPLAINT

**Foley & Lardner LLP**
321 N. Clark Street, Suite 3000
Chicago, Illinois 60654-4762
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
Michael J. Small (IL Bar No. 6207645)
William J. McKenna (IL Bar No. 3124763)
David B. Goroff (IL Bar No. 6190039)
Kristin M. Sikora (IL Bar No. 6340447)
msmall@foley.com
wmckenna@foley.com
dgoroff@foley.com
ksikora@foley.com

*Attorneys for Little Owl Argon, LLC, Glenora Company, James I. Uihlein and James P. Uihlein*

**Greenberg Traurig, LLP**
77 W. Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-8400
Scott Mendeloff
Gabriel Aizenberg
mendeloffs@gtlaw.com
aizenbergg@gtlaw.com

*Attorneys for Peter Ferro, Jr., Joseph Canfora, Mark Triffler, Mark Triffler Trust, Bruce Breitweiser, Byron Faermark, Barry Edmonson, Cardinal Trust, Margon LLC and Merit Gaming Management Group, L.P.*

**Cotsirilos, Tighe, Streicker, Pouolos & Campbell, Ltd.**
33 North Dearborn Street, Suite 600
Chicago, Illinois 60602
Telephone: (312) 263-0345
Terence H. Campbell
Eric S. Pruitt
tcampbell@cotsiriloslaw.com
epruitt@cotsiriloslaw.com

*Attorneys for John A. Kuhlman, Jr.*

**Greenberg Traurig**
77 W. Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-1087
Steven Marc Malina
David Stephen Repking
malinas@gtlaw.com
repkingd@gtlaw.com

*Attorneys for RBC Capital Markets, LLC*

**Jaszczuk P.C.**
30 S. Wacker Drive, Suite 2200
Chicago, Illinois 60606
Telephone: (312) 442-0366
Daniel I. Schlessinger
Seth Corthell
dschlessinger@jaszczuk.com
scorthell@jaszczuk.com

and

**Cohen Tauber Spievack & Wagner P.C.**
420 Lexington Avenue, Suite 2400
New York, New York 10170
Telephone: (212) 586-5800
Kenneth J. Rubinstein
Jackson S. Davis
krubinstein@ctswlaw.com
jdavis@ctswlaw.com

*Attorneys for Daniel Wirzberger*

Plaintiff's[1] Reply fails to establish that the RSAC properly alleges a closed-end conspiracy under the *Morgan* factors.

A. **Plaintiff Does Not Allege Separate Schemes.**

    1. **Plaintiff Improperly Attempts to Recast as Multiple Schemes the Allegations This Court Previously Held States Only a Single Scheme.**

In dismissing the FAC, this Court noted that the events Plaintiff alleged amounted to a single scheme, all concerning economic injuries related to a single contract. (ECF No. 147 at 17-20). The RSAC does not properly plead multiple schemes and cannot do so, continuing to plead the same course of events concerning the same contract. Plaintiff ignores that each supposed new scheme was thoroughly discussed in the allegations of the FAC, which showed only one scheme. (DO12-14) (citing specific FAC paragraphs where what Plaintiff now calls a new "scheme" was already alleged). Plaintiff may cite additional facts or sources here and there, such as the Diekelman Journal[2] or Peraza's arbitration complaint, but the course of events concerning a single contract is the same. Plaintiff ignores *Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629 (7th Cir. 2001), and other authority cited (DO15), which squarely reject this approach.

    2. **Plaintiff Pleads a Single Scheme.**

The RSAC fails to allege anything more than a single scheme. First, Plaintiff's heavy reliance upon *Liquid Air Corp. v. Rogers*, 834 F.2d 1297 (7th Cir. 1987), and related decisions is baseless. Second, Plaintiff fails to address and thus waives argument on Defendants' central point regarding a single scheme. (DO12-15; R23-27).

*Liquid Air and Other Decisions*. "[T]he presence or absence of multiple schemes is highly

---

[1] This Surreply cites to the Opposition to Plaintiff's Motion for Leave to File Revised Second Amended Complaint as "DO_", to Plaintiff's Reply in Support of that Motion as "R_", and to the RSAC as "¶__".

[2] Plaintiff fails to address Defendants' proof that establishes the implausibility of Plaintiff's conclusory allegation that the Diekelman emails were sent on behalf of the Argon Board. (DO7).

relevant to the court's determination of whether a RICO pattern has been established." *CIB Bank v. Esmail*, 2004 WL 3119027, at *6 (N.D. Ill. 2004). Plaintiff states that it "relies in large measure on decisions that emanate from *Liquid Air*," arguing that it "found a continuous pattern of racketeering activity in a scheme that lasted a mere seven months and involved only one victim" and "one overall scheme." (R23). The Seventh Circuit arguably rescinded *Liquid Air* in the context of closed-ended schemes like this one in *McDonald v. Schencker*, 18 F.3d 491, 497 (7th Cir. 1994) ("[Reliance upon *Liquid Air*] is easily disposed of … in light of *H.J.*, that 'the common thread in all these [pre-H.J.] cases'—which led us to acknowledge the existence of continuity and hence a pattern—'is the existence of a genuine threat of continued criminal activity'—or, as *H.J.* put it, an open-ended scheme … ."). Plaintiff acknowledges that *Liquid Air* predates *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 230 (1989), which changed the Seventh Circuit's method for analyzing pattern, emphasizing the necessity for "a lengthy period of racketeering activity or threat of continued criminal activity"—neither of which is present here. (R23 n.19). Indeed, a case to which Plaintiff cites (R28) states that "no case subsequent to *H.J. Inc.* has the Seventh Circuit held that a pattern has been properly alleged or proved under the circumstances of *Liquid Air*." *Meyer Material Co. v. Mooshol*, 188 F. Supp. 2d 936, 943 (N.D. Ill. 2002) (although RICO defendants arguably engaged in two different forms of fraud (stealing of cash and falsified checks), the court ruled: "we are presented with allegations of only one scheme to defraud, *i.e.* Beniss used his position as an employee to defraud Meyer.").[3]

---

[3] *See Equity Residential v. Kendall Risk Mgmt.*, 2005 WL 1026686, at *10 n.7 (N.D. Ill. 2005) ("… *Liquid Air* was decided prior to the Supreme Court's decision in *H.J., Inc.*, which altered the pattern analysis, and this court is unable to identify any cases subsequent to *H.J., Inc.* in which the Seventh Circuit held that a pattern had been properly alleged or proved under the circumstances of *Liquid Air*."). Another court noted that *HJ* "partially abrogated" *Liquid Air*. *CIB Bank*, 2004 WL 3119027, at *6-7 & n.5.

Plaintiff incorrectly asserts that *Liquid Air* supports the finding of "different RICO Schemes where there are discrete harms that result from each act of each RICO Scheme." (R4). This improperly conflates two *Morgan factors*, *i.e.*, separate schemes and distinct harms. The Seventh Circuit in *Liquid Air* found a single scheme despite finding distinct harms. 834 F.2d at 1305. While plaintiff alleged two separate schemes, each against a different victim, the Court found only a single scheme because plaintiff failed to allege a valid scheme as to the second victim. *Id. Liquid Air* thus does not state that the presence of discrete harms establishes multiple schemes.

The other two cases upon which Plaintiff relies—*Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516, 524 (7th Cir. 1995), and *Chen v. Mayflower Transit, Inc.*, 315 F. Supp. 2d 886 (N.D. Ill. 2004)—do not advance its cause. The Seventh Circuit has undermined significant parts of the basis for *Uniroyal* over the 27 years since it issued the opinion.[4] Furthermore, *Uniroyal* is distinguishable in that it: (i) notes that the "interdependence amongst predicate acts"—as exists in the instant case—is indicative of a single scheme; and (ii) extended over a period of three years. *Id.* at 523. *Chen* involved 18 victims over the span of 4 years involving multiple contracts and different injuries. 315 F. Supp. at 912.

*Indistinct Schemes and Concealment*. Plaintiff fails to address Defendants' argument that the first three "schemes" all arise out of the same loan agreement (which anticipated increased borrowing limits) and entail the same sort of allegedly fraudulent activity, *i.e.*, financial misstatements to advance and continue the scheme. (DO12-15; R23-27). Even Plaintiff's assertion that the misstatements involved slightly different subjects—*e.g.*, non-disclosure of doubtful

---

[4] *Uniroyal* is based upon findings, for example, that a continuous RICO pattern can be based upon a single scheme and a single victim. *Uniroyal*, 63 F.3d at 523. The Seventh Circuit in *Jones* held that the ruling in *Liquid Air* holding that a single scheme was adequate to show a pattern of racketeering was "rare" and an exception to the general rule. *See Jones v. Lampe*, 845 F.2d 755, 758 (7th Cir. 1988). Courts in this jurisdiction have held that "a pattern cannot be founded on injuries to a single victim." *Lockhart v. HSBC Fin. Corp.*, 2020 WL 6134984, at *5 n.3 (N.D. Ill. 2020).

3

accounts, non-disclosure that disclosed transferred loans were arguably more valuable—does not render the misstatements separate schemes. *See, e.g.*, *Brandt v. Schal Assoc., Inc.*, 854 F.2d 948, 952-53 (7th Cir. 1988) (single scheme despite the fact that many allegedly fraudulent reductions in sum due on contract were falsely based upon separate and distinct factual assertions); *CIB Bank*, 2004 WL 3119027, at *6-7 & n.5 (one scheme: ten allegedly fraudulent draw requests on a single loan each involving different factual representations as to the purpose of the draw). Similarly, Plaintiff fails to address Defendants' law and argument that the fourth and fifth "schemes" cannot be deemed separate as the RSAC repeatedly casts them as lulling and concealment. (DO13-14).

## B.     Plaintiff Cannot Allege A Scheme of Sufficient Duration.

Plaintiff fails to address and thus waives argument regarding the clear law Defendants cite that the time spent plotting a predicate act and the time spent covering it up are both excluded from a scheme's duration. (DO17-18; R29). This means that the time before any alleged false financials were sent to Princeton in April 2015 and the alleged misconduct after August 2016 involved concealment must be excluded. This results in a duration of 16 months. This Court previously found a duration of 20 months to be insufficient and thus to weigh "slightly against" a pattern. (ECF No. 147 at 19). Thus, the duration continues to weigh against a pattern.[5]

Plaintiff claims that the duration should extend to the date of Schnosenberg's perjurious testimony in the bankruptcy hearing. (R29). Plaintiff fails to address Defendants' points that the: (i) RSAC fails to allege anything supporting its conclusory claim that any other Defendants participated or even knew of Schnosenberg's perjury; (ii) false testimony was concealment

---

[5] Plaintiff notes that this Court in *Sears Roebuck and Co. v. Emerson Elec. Co.*, 2003 WL 60573 (N.D. Ill. 2003), cited another case, *U.S. v. Stodola*, 953 F.2d 266 (7th Cir. 1992), which found a 20-month duration sufficient. That criminal RICO case concerned a county commissioner who shook down 17 separate parties for bribes. This case concerns a single loan, and this Court already found 20 months was insufficient.

4

insufficient to extend the period; and (iii) RSAC alleges that several defendants disclosed to Plaintiffs the alleged false financial representations in December 2016. (¶¶116; 121-26).

C. **No Distinct Injuries: All Alleged Injuries Arise from the Same Loan Agreement.**

Plaintiff fails to establish the distinct injury prong of *Morgan* by improperly relying upon *Liquid Air* and other cases and by misstating the nature of the injury in this case. "The occurrence of distinct injuries is the occurrence of different *types* of injuries, not multiple instances of the same injury." *CIB Bank*, 2004 WL 3119027, at *6 (citation and quotation omitted).

It is well established that the acts alleged in this case—arising as they do from a single loan agreement—do not produce discrete injuries of the type involved in *Liquid Air*.[6] *Uniroyal* does not help Plaintiff as it highlights the elements that make *Liquid Air* distinguishable from this case: (i) consistent with its emphasis upon the issue of "interdependence amongst predicate acts," the Court observed there that in *Liquid Air* each invoice "had little to do with the previous or subsequent false invoices"; and (ii) it involved the sort of injury that many cases in this jurisdiction have found not to be discrete for purposes of the *Morgan* analysis. 63 F.3d at 524. Notably, Plaintiff cannot validly assert that the bankruptcy fraud element of its claims avers a distinct form of injury. Plaintiff does not dispute that the alleged attempt to secure Plaintiff's cash collateral was unsuccessful and thus is not a form of injury. (DO21).

---

[6] *See, e.g.*, *Brandt*, 854 F.2d at 953-54 (single contract followed by multiple fraudulent adjustments (back charges) designed to reduce the cost of the contract; although the several adjustments each involved discrete facts, the Court held that all involved the same basic type of damage: "*Liquid Air* is thus different from this case because here we do not have repeated or multiple injuries. The back charges filed by Northwestern were not multiple injuries, but were instead the means allegedly used by Northwestern to lower a single contract price."); *CIB Bank*, 2004 WL 3119027, at *6-7 & n.5 (ten fraudulent draw requests on a single loan each involving different factual representations regarding the purpose of the draw were "ten repeated instances of the same fraudulent act, which, … are properly considered only one distinct injury of improperly used loan funds."); *Northbrook v. Baker*, 1994 WL 630705, at *4 (N.D. Ill. 1994) ("LaSalle Bank's allegations of economic injury stem from the same original contract and from identical predicate acts repeated twenty-six times [*i.e.*, false borrowing certificates]. Since LaSalle's injuries were distinct in occurrence only, not in type, it cannot sufficiently plead this *Morgan* factor.").

D.   **Plaintiff Only Identifies One Victim: Itself**.

Plaintiff does not state a basis for adding Hamilton and Goldstein as victims in this case because neither are victimized by the predicate acts alleged. Those all relate to alleged misrepresentations *to Princeton* (¶¶140, 208, 280-84) with no allegations that the communications ever went to either of them.[7] (¶¶231-64). To be a victim, one must be injured directly by a predicate act. *See, e.g.*, *Liquid Air*, 834 F.2d at 1304 ("Moore was not injured as a direct result of any of the predicate acts…Thus, for the purpose of establishing a pattern of racketeering activity, Moore is not a victim."); *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, (7th Cir. 2019) (no RICO claim because plaintiff failed to adequately plead predicate acts of fraud as to some alleged victims).

Defendants' brief explains why Hamilton was not a victim, including that Hamilton (at most) was a victim of the Spartan Entities and the RSAC does not allege that Argon had direct or indirect contact with Hamilton. (DO24-25). Plaintiff does not respond to this argument, waiving any opposition to it. (R27-28).

Plaintiff fails to address how Goldstein went from a perpetrator of wrongs against it (which this Court accepted in finding him to be a conspirator) to becoming an alleged victim. (DO25). Recognizing perhaps that Goldstein himself did not file the Peraza Complaint upon which Plaintiff relies, Plaintiff newly and improperly alleges that Peraza and Goldstein are interchangeable (R11 n.13, R28). This is false. An employee is distinct from its employer and Goldstein is not a party to the Peraza arbitration. Moreover, Plaintiff fails to respond to Defendants' argument that Plaintiff's position as to Goldstein/Peraza is contrary to other allegations and exhibits, including that the

---

[7] Despite admitting that "creditors of a RICO victim such as Argon are generally not considered victims" (R28), Plaintiff raises the new argument that Argon's creditors were victims. (R28). This is not alleged in the RSAC. Moreover, if Argon's creditors are victims of *all* the various supposed schemes, as Plaintiff now alleges, then Plaintiff lacks standing to advance his RICO claim. Injury against Argon's creditors generally, means that the claim belongs to Argon's estate. (DO20).

6

allegations of alleged improper commission payments to two RICO Defendants have nothing to do with any alleged RICO scheme. (DO25-26; R11 n.13, R28).

E.     **Plaintiff Fails to Plead an Adequate Number and Variety of Predicate Acts.**

Plaintiff fails to respond to Defendants' arguments that Plaintiff did not plead an adequate number and variety of predicate acts. (DO20-23). Plaintiff does not dispute Defendants' point that the bulk of the alleged predicate acts constitute mail and wire fraud, which cannot satisfy this *Morgan* factor. (DO20). To the contrary, Plaintiff's one-paragraph argument on this *Morgan* factor focuses almost exclusively upon the multiple acts of mail and wire fraud it has alleged—pointing only to the alleged false bankruptcy testimony as a different type of predicate act. (R27). Plaintiff also fails to respond to Defendants': (i) six separate arguments as to why the alleged Bankruptcy Fraud is not actionable as a predicate act (DO20-21; R27); and (ii) argument that the predicate acts based on the Interstate Transportation of Stolen Property Act fail. (DO22-23; R27).

F.     **Each of the Alleged Individual Schemes Is Defective.**

The several schemes Plaintiff alleges are each defective. (DO 3-9, 11-25). Plaintiff makes significant concessions as to Scheme 2: Conversion/Theft of Loan Proceeds. Plaintiff alleges this arose from actions "not disclosed to Princeton," *i.e.*: (i) the use of Princeton's loan proceeds to acquire consumer loans by transferring them to SSF/FTAM; and (ii) a Memorandum of Understanding (the "Spartan MOU") allegedly not disclosed to Princeton stating that the loans "would be 'initially funded from the balance sheet of Argon Credit.'" (¶¶157-59, 168).

The RSAC alleges that Defendants concealed the Spartan MOU and that this set forth the main elements of the transactions that Plaintiff deems fraudulent, *i.e.*, the Spartan loans would be "funded from Argon's balance sheet" and included the alleged double pledging of loans. (¶¶158-159). Plaintiff's Reply now *admits* it knew of the Spartan Transactions and does not dispute that

7

it had the Spartan MOU *before* the Spartan Transactions occurred. (R52-57) The Reply concedes that: (i) "some aspects of the original structure were reported to Plaintiff"; and (ii) it "indisputably was given some information" about the Spartan Transactions. (R9 & n.10, R57). This dooms Plaintiff's position that it was unaware of the core elements of the alleged Spartan Fraud and thus fatally undermines the existence of the Conversion/Theft of Loans as a stand-alone scheme.

As to these several schemes, Plaintiff leans heavily upon the Zumski Declaration and Schnosenberg Statement but ignores the principal argument Defendants make in their Opposition. Zumski/Schnosenberg merely recite broad conclusory statements that have no factual detail, and lump parties together with no supporting facts. Zumski also makes assertions about what investors and lenders did and discusses Princeton's state of mind, when he could have no foundation for doing so.[8] The Seventh Circuit has held that mere knowledge gives no basis for holding one lender (or investor) liable to another, as no duty exists. (DO29-30 (citing *e.g.*, *B.E.L.T, Inc. v. Wachovia Corp.*, 403 F.3d 474 (7th Cir. 2005)). Plaintiff disregards (and thus concedes) this authority.[9]

**G.     Other Varied Errors.**

*Little Owl Defendants and RBC.* Plaintiff falsely accuses the Uihleins, along with Little Owl, Glenora, RBC Capital, and Kuhlman as being "controlling investors, insiders and active

---

[8] Plaintiff misunderstands Defendants' reasons for citing *Miller v. Gain Financial*, 995 F.2d 706, 709 (7th Cir. 1992). It is cited not to suggest that allegations in an affidavit cannot be considered on a motion to dismiss when it is a complaint exhibit. Rather, the point is that one cannot overcome pleading defects in a complaint by attaching as exhibits affidavits that contain those same defects.

[9] Plaintiff relies on the *Restatement (2d) of Torts* § 551, but § 551 itself expressly states that it does not create a duty to disclose. It states that a negligent breach of duty may be actionable and may apply to non-disclosures "only if, [a defendant] is under a duty to the other to exercise reasonable care to disclose the matter in question." (R33-34) (quoting same). It cannot be used to bootstrap duty, as Plaintiff tries. Similarly, *B.E.L.T.* and other authority make clear that the "customs" of the lending trade do not create a duty by one lender to disclose to another. (R35).

8

managers." (R13).[10] This is flatly untrue. Only Kuhlman was a manager, and he was an outside manager. DO27). The Uihleins, Glenora, and RBC were neither investors nor controlling. (*Id.*).

*Newman Declaration*. Plaintiff also claims that Newman's 2019 Declaration is somehow a continuation of the false interest payments scheme, even though interest payments stopped three years earlier. (R17). This argument reinforces that the bankruptcy fraud and false interest payment schemes are not distinct schemes. Plaintiff does not state that anything in the Newman Declaration is false (R17) but says that truthful statements can be fraudulent. (*Id.*) Plaintiff cites to the distinguishable *Macovski v. Groupon, Inc.*, 553 F. Supp. 3d 460 (N.D. Ill. 2021) (R17 n.17), which addresses under § 10(b) of the Securities Exchange Act statements that are susceptible to another interpretation by a reasonable investor. Section 10(b) does not apply. Also, Plaintiff does not identify any comparable statement in the Newman Declaration and could not have "misled" Princeton in 2019 because the case had been with the Chapter 7 Trustee for nearly three years.

*RBC*. Plaintiff's attempt to hold RBC vicariously liable fails. First, Plaintiff has not, as it must, allege that RBC benefited "***from the RICO violation***." *Michalowski v. Rutherford*, 82 F. Supp. 3d 775, 786 (N.D. Ill. 2015) (emphasis added). At most, Plaintiff alleges that because RBC employed Kuhlman, "[RBC] stood to financially gain and benefit from Kuhlman's activities at all times … ." (R46). This does not, however, connect the RICO violation to a direct benefit to RBC. Second, Plaintiff has not alleged and the RSAC cannot be read as alleging that RBC directly or via Kulhman (R45-46) was the "central figure or aggressor in the alleged scheme, and Plaintiff does not address this in its Response. *See Glen Flora Dental Ctr., Ltd. v. First Eagle Bank*, 2019 WL 4601742, at *7 (N.D. Ill. 2019).

---

[10] Likewise, Plaintiff continually refers to the Uihleins as being "de facto managers," but no facts support. Indeed, they did not attend *any* of the Board meetings Plaintiff references, ¶285, and requested to be kept in the loop on matters, ¶302, which is at odds with managing and controlling.

9

*Merit*. Citing to ¶¶53, 299-300, and 334-35, Plaintiff devotes a single paragraph to arguing that Merit is vicariously liable for the conduct of certain individual defendants. (R49). Plaintiff fails, as it must under *Glen Flora*, to allege that Merit was a central figure in the alleged scheme. Further, Plaintiff fails to allege that Merit benefitted from alleged illegal conduct of its supposed employees, *i.e.*, "use[d] the proceeds or otherwise profit[ted] from the specific racketeering activity." *Schwarz v. Nat'l Van Lines*, 2004 WL 1497804, at *4 (N.D. Ill. 2004). Rather, at best, Plaintiff alleges in the above-referenced paragraphs that these defendants "used" Merit accounting and legal services, starting in July 2016, "as an instrument through which to conduct their criminal scheme." *See id.* This does not suffice. *See id.*

*Wirzberger*. Plaintiff's Reply fails to show that there is any viable claim against Wirzberger (a non-RICO defendant). The contention that Wirzberger owed any "duty" to plaintiff (R59) as a precursor to plaintiff's fraud-based claims, is spurious. Plaintiff's reference to Restatement (2d) of Torts § 551 (R59) is misguided as there is no allegation that Wirzberger was a party to any transaction with Princeton (a prerequisite under § 551) or had any interaction with Plaintiff whatsoever. The assertion that Wirzberger "does not contest the other elements of the fraud-based claims" (R59) is plainly false. (*See, e.g.*, ECF No. 162 at 2-3). Further, the Reply fails to rebut (and thus concedes) that there are no allegations that Wirzberger individually possessed any allegedly converted funds. Plaintiff ignores that the RSAC lacks allegations separating Wirzberger from his employer (Hamilton) or provides any basis for individual liability against him.

10

Dated: June 14, 2022  Respectfully submitted,

By:*/s/ Scott Mendeloff*
**Greenberg Traurig, LLP**
77 W. Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-8400
Scott Mendeloff
Gabriel Aizenberg
mendeloffs@gtlaw.com
aizenbergg@gtlaw.com

*Attorneys for Peter Ferro, Jr., Joseph Canfora, Mark Triffler, Mark Triffler Trust, Bruce Breitweiser, Byron Faermark, Barry Edmonson, Cardinal Trust, Margon LLC, and Merit Gaming Management Group, L.P.*

**Greenberg Traurig, LLP**
77 W. Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-1087
Steven Marc Malina
David Stephen Repking
malinas@gtlaw.com
repkingd@gtlaw.com

*Attorneys for RBC Capital Markets, LLC*

**Foley & Lardner LLP**
321 N. Clark Street, Suite 3000
Chicago, Illinois 60654-4762
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
Michael J. Small (IL Bar No. 6207645)
William J. McKenna (IL Bar No. 3124763)
David B. Goroff (IL Bar No. 6190039)
Kristin M. Sikora (IL Bar No. 6340447)
msmall@foley.com
wmckenna@foley.com
dgoroff@foley.com
ksikora@foley.com

*Attorneys for Little Owl Argon, LLC, Glenora Company, James I. Uihlein, and James P. Uihlein*

11

**Jaszczuk P.C.**
30 S. Wacker Drive, Suite 2200
Chicago, Illinois 60606
Telephone: (312) 442-0366
Daniel I. Schlessinger
Seth Corthell
dschlessinger@jaszczuk.com
scorthell@jaszczuk.com

and

**Cohen Tauber Spievack & Wagner P.C.**
420 Lexington Avenue, Suite 2400
New York, New York 10170
Telephone: (212) 586-5800
Kenneth J. Rubinstein
Jackson S. Davis
krubinstein@ctswlaw.com
jdavis@ctswlaw.com

*Attorneys for Daniel Wirzberger*

## **CERTIFICATE OF SERVICE**

      I, David S. Repking, certify that on June 14, 2022, a true and correct copy of the foregoing was filed electronically through the Northern District of Illinois CM/ECF electronic filing system, which will send a notification of filing to all counsel of record

      /s/ *David S. Repking*