IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FUND RECOVERY SERVS., LLC, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>RBC CAPITAL MARKETS, LLC, et al., )<br>)<br>Defendants. ) | Case No. 20 C 5730 |

### ORDER ON MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

The Court previously dismissed the amended complaint of Fund Recovery Services, LLC, which the Court will refer to as Princeton, against a couple dozen or so defendants. Fund Recovery Services is the assignee of the rights of Princeton Alternative Income Fund, L.P. in a loan agreement referred to as the Fintech Loan Agreement and related documents. The Court will refer to the plaintiff as Princeton.

In the two prior versions of its complaint, Princeton asserted claims under the Racketeer Influenced and Corrupt Organizations Act (RICO) and state law. After the defendants moved to dismiss Princeton's original complaint, it filed an amended complaint to attempt to address some of the issues raised by the defendants. The defendants again moved to dismiss. The Court overruled most of the defendants' arguments for dismissal but sustained one that was dispositive, ruling that Princeton's complaint did not allege a "pattern of racketeering activity" as required to sustain a claim for a violation of RICO or for RICO conspiracy. *See Fund Recovery Servs., LLC v. RBC Cap. Mkts., LLC*, No. 20 C 5730, 2022 WL 142404 (N.D. Ill. Jan. 17, 2022).

The Court's order advised Princeton that unless it filed a motion for leave to amend with a proposed amended complaint that adequately stated a claim over which the Court has subject matter jurisdiction, the Court would dismiss Princeton's RICO claims with prejudice and would dismiss its state-law claims for lack of supplemental jurisdiction. Princeton then filed a motion for leave to file a second amended complaint. This motion is fully briefed, and the Court held oral argument. The Court apologizes for the length of time it has had the matter under advisement.

The Court will omit the factual background here except as discussed below but quotes here the discussion in its earlier decision explaining why a "pattern" was lacking from the amended complaint:

> The defendants also argue that Princeton fails to allege a pattern of racketeering activity. Under 18 U.S.C. § 1961(5), the plaintiff must allege "at least two acts of racketeering activity" within a ten-year period to plead a pattern. But that, alone, is not enough. To plead a pattern of racketeering activity, the plaintiff must also satisfy the "continuity plus relationship" test with respect to the predicate acts. *Menzies v. Seyfarth Shaw, LLP*, 943 F.3d 328, 336 (7th Cir. 2019). The defendants do not dispute that the amended complaint meets the relationship element of the test, which asks whether the predicate acts are related to one another. *Id*. at 337. They do, however, dispute that the amended complaint satisfies the continuity element. To determine whether a complaint sufficiently alleges continuity, courts assess the following factors: "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986).
>
> > i.  Number and variety of predicate acts
>
> Princeton has alleged at least eleven acts of mail or wire fraud, which weighs in favor of establishing the required continuity. But all are the same type of criminal offense, which weighs against a finding of continuity. This is especially true given that the Seventh Circuit has "repeatedly rejected RICO claims that rely so heavily on mail and wire

fraud allegations to establish a pattern." *Jennings v. Auto. Meter Prods., Inc.*, 495 F.3d 466, 475 (7th Cir. 2007).

        ii.        Length of time over which acts were committed

The Seventh Circuit has suggested that this factor is the most important. *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 780 (7th Cir. 1994) ("Duration is perhaps the closest thing we have to a brightline continuity test.") (internal quotation omitted). The amended complaint alleges a pattern of racketeering activity from May 2015 through December 2016, a total of twenty months. Although there is no brightline rule for duration, the Seventh Circuit "ha[s] not hesitated to find that closed periods lasting several months to several years did not qualify as 'substantial' enough to satisfy continuity." *Roger Whitmore's*, 424 F.3d at 673. The defendants cite to several Seventh Circuit cases where the court found that the requisite continuity was lacking in schemes about as long or longer than the one in this case. *See* Defs.' Mem. [dkt. no. 126] at 15; *see also Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1024 (7th Cir. 1992) (collecting cases). In *United States Textiles, Inc. v. Anheuser-Busch Cos.*, 911 F.2d 1261, 1267–68 (7th Cir. 1990), however, the Seventh Circuit suggested that two years was a significant amount of time (although the Court notes that two years is quite a bit longer than twenty months). Given the relative lack of authority supporting Princeton's position, this factor weighs slightly against a finding of continuity.

        iii.        Number of victims

Princeton argues that there were multiple victims of the scheme, but it doesn't specify exactly who the other victims were. Reading the complaint liberally, the Court determines that there were two victims of the scheme: Princeton and Hamilton Funding. Although there were other creditors hurt by the scheme, only Princeton and Hamilton Funding were not also alleged to be co-conspirators. The fact that there were only two victims cuts against the contention that the criminal acts were continuous.

        iv.        The presence of separate schemes

Princeton alleges a single scheme: a scheme to fraudulently induce it to increase the Argon Entities' line of credit through the delivery of false financials. Although the Seventh Circuit has held that "the mere fact that the predicate acts relate to the same overall scheme . . . does not mean that the acts automatically fail to satisfy the pattern requirement," the presence of a single scheme does weigh against such a finding. *Morgan*, 804 F.2d at 975.

        v.        The occurrence of distinct injuries

3

>Neither party discusses this factor, but it weighs against a finding of continuity in this case. According to Seventh Circuit precedent, "identical economic injuries suffered over the course of two years stemming from a single contract [are] not the type of injuries which Congress intended to compensate via the civil provisions of RICO." *Vicom*, 20 F.3d at 782. This is what Princeton alleges here. All of Princeton's injuries are economic and related to the same contract, the Fintech Financial Agreement.
>
>\* \* \*
>
>Having assessed the relevant factors, the Court concludes that the amended complaint fails to meet the continuity element of the standard for a RICO "pattern." This case is similar to *Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 663 (7th Cir. 1992), where the court held that the complaint did not allege the required continuity because "the allegations involve multiple acts of mail fraud in furtherance of a single scheme . . . and resulted in nondistinct injuries." In *Talbot*, the court assumed that the conspiracy extended over four years, which is quite a bit longer than here, but it still held that the continuity requirement was not met. The Court therefore dismisses the RICO claim due to its failure to adequately allege a pattern of racketeering activity. . . .

*Fund Recovery Servs.*, 2022 WL 142404, at *8-10.

Princeton contends that the proposed second amended complaint cures the deficiencies that the Court found in the first amended complaint. The defendants argue otherwise and ask the Court to deny leave to amend on the ground of futility. This amounts to a motion to dismiss for failure to state a claim, so the Court applies the standard governing such motions. In other words, the Court takes the complaint's factual allegations as true, draws reasonable inferences in Princeton's favor, and assesses whether it has asserted a plausible claim for relief. *See, e.g., AnchorBank, FSB v Hofer*, 649 F.3d 610, 614 (7th Cir. 2011); *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019).

First, Princeton argues that under *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1305 (7th Cir. 1987), "the repeated infliction of economic injury upon a single victim of a single scheme is sufficient to establish a pattern of racketeering activity"; Princeton

4

contends the second amended complaint meets this standard. That aside, Princeton contends it has now alleged not just one scheme, but multiple schemes that caused distinct injuries; it has alleged a greater number and variety of RICO predicate acts; it has identified more victims; and it now alleges predicate criminal activity of a longer duration.

The Court begins with the five schemes that Princeton says it has now alleged. <u>First</u> is the "loan inducement scheme," under which it says it was induced to initially lend $20 million based on false financial information from the borrowers, referred to as Argon or the Argon entities, to hide the fact that Argon was actually insolvent. <u>Second</u> is what Princeton calls the "conversion/theft of loan proceeds scheme." This involved selling some of the loans made with the funds supplied by Princeton, referred to as the "Spartan loans." They were supposedly the most lucrative assets in Argon's portfolio, and, like other loans made with the Princeton proceeds, they were pledged as security for repayment of the Princeton debt. Argon sold the Spartan loans them to an entity called FTAM—thus making money for itself—but allegedly made it appear the loans were still on its (Argon's) books. FTAM then formed another entity called Spartan SPV, and that entity borrowed $10 million from a lender called Hamilton Funding and pledged the Spartan loans as security for repayment. As a result, these loans were double-pledged.

<u>Third</u> is what Princeton calls the "false financials scheme." This consisted of Argon and other defendants inducing Princeton to advance an additional $17 million in credit based on false financial information regarding Argon. <u>Fourth</u> is the "false interest payments scheme," under which, Princeton alleges, investors injected funds into Argon

on an as-needed basis to make sure it made its monthly interest payments so that Princeton would not discover Argon's true and desperate financial condition. <u>Fifth</u> and last is what Princeton calls the "bankruptcy scheme," under which Argon filed for bankruptcy while making false statements regarding the extent of its financial problems and the cause of its insolvency.

  The Court is not persuaded that these actually amount to separate schemes for purposes of the RICO pattern analysis. First of all, the allegations supporting the RICO claims are not materially different in this regard from the previous version of the complaint; it's mainly the characterization that Princeton has changed since it got the Court's ruling on the earlier motion to dismiss. The supposedly multiple schemes basically all boil down to this: the defendants engaged in an ongoing fraud to induce Princeton to loan money, avoid paying it back, and conceal the fraud. In other words, these supposedly "multiple schemes" had a single goal: separating Princeton from its money and keeping it. *See, e.g., Brandt v. Schal Assocs., Inc.*, 854 F.2d 949, 952-53 (7th Cir. 1988) (multiple acts with a single goal indicate a single scheme). In addition, the alleged false interest payments and bankruptcy schemes are not appropriately considered separate in the "pattern" analysis; they amount to allegations of a coverup or concealment and thus are properly viewed as part of the same scheme, not a separate one. *See Midwest Grinding*, 976 F.2d at 1021; *Jones v. Lampe*, 845 F.2d 755, 759 (7th Cir. 1988).

  In addition, Princeton has not cured the durational deficiency in its previous complaint. The time spent planning a scheme and the time spent covering it up (even if the activity in doing so is criminal) are not counted in considering the scheme's duration

for "pattern" purposes. See *Jennings v. Auto Meter Prods., Inc.*, 495 F3d 466, 474 (7th Cir. 2007); *Harris Tr. and Sav. Bank v. Salomon Bros., Inc.*, 832 F. Supp. 1169, 1175 (N.D. Ill. 1993) (citing *Midwest Grinding*, 976 F.2d at 1024). What Princeton describes is a closed-end scheme that, when viewed correctly, lasted something like one and one-half or perhaps a bit more. That's insufficient for a closed-end scheme to satisfy the RICO pattern requirement. See, e.g., *Antonacci v. City of Chicago*, 640 F. App'x 553, 557 (7th Cir. 2016) (single-victim, twenty-one-month scheme insufficient to satisfy pattern requirement). "The duration of the alleged racketeering activity is perhaps the most important element of RICO continuity," *Jennings*, 495 F.3d at 473-74 (internal quotation marks omitted), and Princeton has not described criminal activity of sufficient duration.

Nor can one consider the allegations to describe distinct injuries or separate victims. In its ruling on the first amended complaint, the Court took Hamilton Funding as a victim, i.e. a second victim in addition to Princeton. This point has been reargued in the current briefs. Upon closer inspection, the Court concludes that one can't consider Hamilton a victim of the predicate acts that the defendants are claimed to have committed. In particular, neither Argon nor any of the RICO defendants are actually alleged to have directed any actions toward Hamilton. Rather, as indicated earlier, what is alleged is that Argon transferred the Spartan loans to other entities despite having pledged the loans to Princeton and that Spartan SPV separately pledged the same loans to Hamilton as security for it borrowed. Hamilton may be a victim of the double-pledging, but that makes it, at most, an indirect victim of the frauds the RICO defendants are claimed to have engaged in.

Princeton now also contends that Bruce Goldstein, who it previously named as a defendant on the RICO claims, actually was a victim. But what is alleged to have victimized him was the nonpayment of commissions due to Argon-related insolvency issues. That doesn't make him a separate victim for purposes of the RICO pattern analysis. If person A commits a fraud on company B and company B goes under as a result, causing employees C, D, and E to lose their jobs, for present purposes one would consider the victim of the fraud to have been B, but not also C, D, or E. They may have been harmed, but their harm is indirect and thus they aren't strictly speaking considered victims of the crime. Were it otherwise, *every* fraud easily could be found to have multiple "victims" (for example, the bank that made a bad loan based on false information, the loan officer who lost her job due to her lack of careful review of the loan application, the teller who is laid off because the bank's losses on the loan require it to downsize, etc.). This would make analysis of the multiple-victims question effectively meaningless.

The Court acknowledges that Princeton has now alleged a greater number and variety of predicate acts, including mail fraud, interstate transportation of stolen property, and bankruptcy fraud. But this is not enough to save the RICO claims on the "pattern" issue. There's still just a single injury, specifically the loss to Princeton from its advancement of funds that weren't repaid.

In sum, the Court concludes that Princeton's additional allegations and its attempt to recharacterize its RICO claims do not enable it to clear the "pattern" hurdle. The predicate offenses, viewed correctly, were all geared toward a single criminal goal with one cognizable victim, and they occurred over a relatively compact period of time.

"Congress was concerned in RICO with long-term criminal conduct," *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989), and the pattern requirement is one way the statute achieves this end. Princeton's second amended complaint does not satisfy the pattern requirement and, more broadly, does not allege anything that would amount to the sort of "long-term criminal conduct" at which RICO is aimed.

Finally, Princeton's reliance on *Liquid Air* and is misplaced. After the Supreme Court's decision in *H.J., Inc.*, which focused on the need to show "a lengthy period of racketeering activity or threat of continued criminal activity," *id.* at 230, the Seventh Circuit has read *Liquid Air* as a case involving "an open-ended scheme which possessed the threat of extending indefinitely into the future." See *McDonald v. Schencker*, 18 F.3d 491, 498 (7th Cir. 1994). That cannot be said of the criminal activity claimed by Princeton in this case; it was a closed-ended scheme with no such threat. Nor does *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516 (7th Cir. 1995), which Princeton also cites, assist it here. That case involved a three-year scheme—more than twice as long as what's alleged here—and it makes it clear that "interdependence amongst [sic] predicate acts" tends to indicate a single scheme. *Id.* at 524. That's the case with Princeton's RICO claims.[1]

## Conclusion

For the reasons stated above, the Court denies plaintiff's motion for leave to file a second amended complaint [dkt. no. 148]. Because it has become clear at this point

---

[1] Given its ruling on the RICO pattern issue, the Court need not address the defendants' other arguments in support of their contention that amendment would be futile.

that plaintiff cannot assert a viable RICO claim—the claim that provides the basis for federal subject matter jurisdiction—the Court directs the Clerk to enter judgment dismissing plaintiff's civil RICO claims with prejudice and dismissing plaintiffs state-law claims for lack of supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

Date: September 30, 2022

_____
MATTHEW F. KENNELLY
United States District Judge